Cary, Appellant, v. Klabunde, Respondent.

*November 30, 1960—January 10, 1961.*

For the appellant there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland,* attorneys, and *Victor M. Harding* and *Walter P. Rynkiewicz* of counsel, all of Milwaukee, and oral argument by *Victor M. Harding.*

For the respondent there was a brief by *Swingen, Stern & Lenahan* and *William E. Johnson,* all of Madison, and oral argument by *Mr. Johnson.*

CURRIE, J.   Sec. 270.49 (2), Stats., provides as follows:

"Every order granting a new trial shall specify the grounds therefor.  In the absence of such specification, the order shall

be deemed granted for error on the trial. *No order granting a new trial in the interest of justice shall be valid or effective, unless the reasons that prompted the court to make such order are set forth in detail therein.* The court may grant or deny costs to either party." (Italics supplied.)

There is no question but that the instant order, which granted a new trial in the interest of justice, fails to comply with such statute because it fails to state the reasons in detail that prompted the court to make such order. This court has held in *Alexander v. Meyers* (1952), 261 Wis. 384, 386, 52 N. W. (2d) 881, and *Guptill v. Roemer* (1955), 269 Wis. 12, 20a, 68 N. W. (2d) 579, 69 N. W. (2d) 571, that, if the reasons for granting a new trial in the interest of justice are set forth in detail by the trial court in a memorandum opinion, the order itself will comply with the statute if it incorporates by reference such reasons stated in the memorandum opinion. This was not done in the order here appealed from.

Counsel for the defendant Klabunde have urged that we exercise our discretionary power under sec. 251.09, Stats., and grant a new trial in the interest of justice. We find it unnecessary to pass on the question of whether there would have been an abuse of discretion on the part of the trial court directing a new trial in the interest of justice, if a proper order complying with sec. 270.49 (2) had been entered. For the purposes of our decision we will assume that there would have been none. However, this court should not exercise its independent discretion to direct a new trial in every instance where we would be compelled to find no abuse of discretion on the part of the trial court in attempting to direct a new trial in the interest of justice, but in which the order is found to be defective for noncompliance with sec. 270.49 (2). Our discretionary power in this respect should be sparingly employed, and ought not to be invoked except in a situation where we are convinced that there has been a probable mis-

carriage of justice if the jury's verdict were permitted to stand. The instant case does not fall in such category.

We will restate such of the testimony as tends to support the verdict. The plaintiff Cary saw the approaching lights of the Kriska car when it was about three fourths of a mile distant. The accident happened a short distance to the north of a small bridge. As Cary's car ascended the ramp of the bridge he decreased his speed by taking his foot off the accelerator. By then the oncoming Kriska car was being brought to a stop and Kriska had turned on his left directional signal lights. Cary then applied his brakes lightly so as to bring his car to a stop opposite the Kriska car and inquire of the driver as to what was the trouble. Cary testified that Kriska's headlights were on high beam and that such lights laid down a curtain beyond which he could not see. He also stated that he was blinded by such lights.

Cary further testified that as he was slowing down in order to stop opposite the Kriska car he suddenly saw the heifers coming toward him at a trot at a 45-degree angle from the right or east shoulder of the highway, but not yet on the pavement. Cary then applied his brakes as hard as he could, but was unable to avoid colliding with them. Four of the heifers were killed instantly and one died a few minutes later. Their weight varied from 250 to 500 pounds each. His car came to a stop almost at the point of impact, and there were skid marks extending back to the south from the rear wheels of the car a distance of 22 feet. Cary stated that when he first saw the heifers they were but 15 feet distant. However, the length of the skid marks, plus the fact that a few more feet must be added for reaction time, indicates that the heifers must have been farther away than 15 feet when he first sighted them. Cary's car was in its own traffic lane at the time of impact, and the skid marks extended straight back to the south in such lane.

Kriska sighted the heifers before Cary did, and Kriska had stopped his car and turned on his directional lights in an attempt to alert Cary to the danger. A few months after the accident Kriska and his wife, who was a passenger in his car at the time the accident occurred, were interviewed by Attorney Pfeil of Elkhorn, who made a contemporaneous memorandum of the statements then made by them. Kriska then stated he had been traveling the night of the accident with his lights on high beam and, that when he saw the heifers, they were walking in a southerly direction on the east shoulder of the road. However, at the trial both Kriska and his wife testified the heifers were on the east half of the pavement, not the east shoulder, when they first saw them.

We are satisfied that the greater weight of the evidence supports Cary's testimony that the heifers did come diagonally onto the highway from the east shoulder and ditch of the highway. If it had not been for the blinding effect of Kriska's headlights and the distraction of his flashing signal lights, Cary in all likelihood would have been able to see the heifers sooner than he did.

The learned trial court in its memorandum opinion expressed the conclusion that, if Cary had run into the heifers as a result of being blinded by headlights of Kriska's car, then Cary would have been negligent as a matter of law as to speed under the holdings in *Lauson v. Fond du Lac* (1909), 141 Wis. 57, 123 N. W. 629, and *Quady v. Sickl* (1952), 260 Wis. 348, 51 N. W. (2d) 3, 52 N. W. (2d) 134. In our opinion this would not be the case, if Cary had been afforded a preview of the pavement where the point of collision occurred and had observed it to be clear of any obstruction to traffic, and then the heifers had thereafter emerged onto the pavement from the east shoulder and ditch while Cary's vision was blinded by Kriska's headlights.

Of the cases cited in the briefs of counsel, the one closest in similarity to the facts here before us is that of *Ott v.*

*Tschantz* (1941), 239 Wis. 47, 300 N. W. 766. In that case a driver of a car which struck a horse had been blinded by the lights of an approaching car. The jury absolved such driver, whose car had struck the horse, of negligence both as to lookout and speed. After verdict the trial court changed answers in the verdict so as to find him causally negligent as to lookout. On appeal this court reversed and directed that judgment be entered on the verdict as originally rendered. From the driver's testimony it was held that the jury had the right to infer that the horse had suddenly come onto the pavement from the right side of the highway. The driver had also testified that he had been afforded a preview of the pavement where the impact occurred, and had seen no horse there at that time. For cases from other jurisdictions holding that a car operator is not necessarily negligent for striking animals which suddenly move into the motorist's path from the side of the road, see Anno. 20 A. L. R. (2d) 1053, at page 1066 *et seq.*

Cary testified that when he was on the bridge he could see the roadway ahead for at least 180 feet and did not see the heifers on the pavement. The accident happened at a point about 135 feet north of the bridge, thus being within the zone of pavement of which Cary had testified he had been afforded a preview. A car operator is not necessarily negligent in proceeding ahead over pavement he had observed by preview is clear of obstructions, even though thereafter blinded by approaching lights of an oncoming car. *Mann v. Reliable Transit Co.* (1935), 217 Wis. 465, 259 N. W. 415.

There is a further reason why Cary cannot be held negligent with respect to speed as a matter of law. He testified that when he first saw the heifers his speed had been reduced to 30 miles per hour and that he could stop his car within the 60 feet of distance he could then see ahead. While the jury was not required to accept this testimony as true, especially in view of the fact that the heifers were struck with suf-

ficient force to kill all five, nevertheless, the determination of Cary's speed was for the jury and not the court.

While the jury might very well have found some negligence on Cary's part, we are not convinced that the jury's verdict constitutes such a miscarriage of justice that we should invoke our discretionary power under sec. 251.09, Stats., to order a new trial.

*By the Court.*—The order appealed from is reversed, and the cause remanded with directions to enter judgment upon the verdict as returned by the jury in favor of the plaintiff and against the defendants.