GRAF, Appellant, v. GERBER, Respondent.

*November 23, 1964—January 5, 1965.*

For the appellant there were briefs and oral argument by *Arthur DeBardeleben* of Park Falls.

For the respondent there was a brief by *Thomas W. Duffy* of Hayward, attorney, and *Victor O. Tronsdal* of Eau Claire of counsel, and oral argument by *Mr. Tronsdal.*

CURRIE, C. J. The two issues presented by this appeal are:

(1) Is the order appealed from void because not filed within two months after the rendering of the jury's verdict?

(2) If the foregoing question be answered in the affirmative, should this court exercise its discretion under sec. 251.09, Stats., to grant a new trial in the interest of justice?

*Validity of Order.*

Sec. 270.49, Stats., provides that a motion after verdict, "if not decided within the time allowed therefor, shall be deemed overruled." This statute further provides that such a motion must be made and heard within two months after the verdict is rendered unless the court by order made before the expiration of the two-month period extends the time for cause. Here there was no order made extending time and the order granting a new trial, while dated within two months after the rendering of the verdict, was not filed with the clerk of court until after the expiration of the allotted two-month period. Therefore, the validity of the order turns on the narrow issue of whether filing within the time allotted for decision is a necessary requisite.

This court has previously held that the statute requiring the trial court to decide motions after verdict within the allotted period, is complied with if the memorandum decision passing on such motions is filed within such time, even though the order for new trial is not filed until after expiration thereof. *Guptill v. Roemer* (1955), 269 Wis. 12, 68 N. W. (2d) 579, 69 N. W. (2d) 571. It has also been held that, if the trial court's decision on motions after verdict is given verbally from the bench in open court within the allotted period, it is timely even though not transcribed and filed until after this period has expired. *Flippin v. Turlock* (1964), 24 Wis. (2d) 49, 127 N. W. (2d) 822. In the instant case, however, the decision was neither pronounced in open court nor filed within the time fixed by sec. 270.49, Stats. It is our considered opinion if the decision on motion to grant a new trial according to sec. 270.49 is not

announced in open court within the statutory allotted time it will not be valid unless the written decision or order of the court deciding such motion either is filed or otherwise authenticated,[1] or all parties adversely affected thereby are notified thereof, within such period.

In *Yanggen v. Wisconsin Michigan Power Co.* (1942), 241 Wis. 27, 4 N. W. (2d) 130, the issue was the validity of two orders extending time within which to decide motions after verdict. Each was dated within the period allotted by then sec. 270.49, Stats., for deciding motions after verdict but were filed after such period had expired. The court held these two orders to be ineffective, and in its opinion stated (at p. 32) :

"An order of the judge at chambers is ineffective until notice thereof has been served upon the opposite party or his attorney. *Spaulding v. Milwaukee & Horicon R. R. Co.* (1860), 11 Wis. *157. For unlike an order made in open court, *Kayser v. Hartnett* (1886), 67 Wis. 250, 30 N. W. 363, such an order would not apprise the opposite party of its existence. And an order made by a judge at chambers is not an order of the court. *Day v. Buckingham* (1894), 87 Wis. 215, 58 N. W. 254. The informality and the uncertainty attendant upon the granting and filing of the orders and the length of the period during which they were not filed nor recorded prevents their recognition as valid and timely orders. Any other ruling would permit the judge to sign an order and thereafter carry it in his pocket until he was minded to have it properly entered of record."

---

[1] In the instant case the circuit judge has his residence in Chippewa county. If upon signing the order on November 23, 1963, he doubted whether, by mailing it to the clerk of court of Sawyer county it would have been received in time to have filed it within the allotted two-month period, the judge could have filed it with the clerk of court of Chippewa county for authentication with directions to transmit it to the clerk of court of Sawyer county for filing. If this were done so that the order had been authenticated by the clerk of Chippewa county within the period allotted by sec. 270.49, for deciding motions after verdict, the order would become effective as of the date of such authentication. See sec. 252.11, Stats.

The rationale of the above-quoted extract is deemed to apply with equal force to decisions or orders deciding motions after verdict. We determine, therefore, that the instant order granting a new trial is ineffective and void.

*Exercise of this Court's Discretion to Grant a New Trial.*

In a situation such as this, where the trial court has determined that a new trial should be had in the interest of justice but the court's decision or order for a new trial is ineffective because of failure to comply with the requirements of sec. 270.49, Stats., this court deems it its duty to review the record to determine whether it should exercise its discretion under sec. 251.09 to order a new trial in the interest of justice.

"However, this court should not exercise its independent discretion to direct a new trial in every instance where we would be compelled to find no abuse of discretion on the part of the trial court in attempting to direct a new trial in the interest of justice, but in which the order is found to be defective for noncompliance with sec. 270.49 (2). Our discretionary power in this respect should be sparingly employed, and ought not to be invoked except in a situation where we are convinced that there has been a probable miscarriage of justice if the jury's verdict were permitted to stand." *Cary v. Klabunde* (1961), 12 Wis. (2d) 267, 270, 107 N. W. (2d) 142.

On July 9, 1962, an altercation took place on plaintiff's farm between defendant and plaintiff in which defendant struck plaintiff causing the latter to fall to the ground. The testimony is in dispute as to whether defendant struck plaintiff only once or several times. Plaintiff testified that the surface of the ground where he fell consisted of rocks and gravel. That same day plaintiff sought medical attention from Dr. Krueger, a physician, at Hayward. The doctor found the following injuries upon examining plaintiff: A

bruise over the left eye and the bridge of the nose; a bruise over the right side of the lower back in the sacroiliac region; and a spot on the left knee which was sore and tender to pressure although there was no visible sign of injury. Plaintiff testified that he bled from a cut on the forehead. Dr. Krueger took X rays of the skull and pelvis region, which X rays were negative with respect to disclosing any bone injury. Dr. Krueger testified that he suggested plaintiff use cold compresses on the bruises and that he may have recommended aspirin for pain.

Plaintiff testified that the cut on his forehead healed in a month or two leaving a scar one-fourth to one-half inch in length in the crease between eye and nose; his back bothered him for about six weeks and after two months caused no further trouble; but he had a swelling on his knee and one spot on the inside of the knee continued to ache. The cold applications did not help his knee and on October 22, 1962, he went to see Dr. Krueger again. Dr. Krueger took X rays of both knees, which apparently disclosed no bone injury, and recommended warm applications.

Plaintiff went to see Dr. Krueger only once more and that was on September 13, 1963, only a few days prior to trial. On this occasion the doctor thought that the left knee was somewhat larger than the right, and found some tenderness on the inside aspect of the knee. He also "thought there was a small tissue mass maybe about the size of, oh, my thumbnail, half an inch across or three-quarters of an inch across." Dr. Krueger testified that this latter "will probably represent a so-called ganglion of the tendon involving the near [sic] joint." A ganglion is a herniation of the membrane that encloses a tendon. The doctor did not recommend operating to correct this condition for the reason that sometimes this type of operation is unsuccessful and occasionally these ganglions disappear of their own accord. However, he did not think it likely the latter would occur and it was his

opinion this condition is permanent. When asked his opinion with respect to permanent disability, Dr. Krueger stated, "I would suggest, that the disability of the left knee in my opinion would be in relationship to the entire leg as a member at about fifteen percent."

Dr. Sorenson, an Eau Claire physician specializing in orthopedic surgery, examined plaintiff on September 19, 1963, and testified as an expert medical witness for defendant as follows: He thought plaintiff had a little increased swelling in the soft tissue overlaying the inner aspect of the knee and that plaintiff probably had suffered a pulling or tearing of some of the ligaments that attach to the inner aspect of the knee. He believes plaintiff's condition is temporary and not permanent and estimated plaintiff's present disability at two and one-half percent of the leg.

In January, 1962, plaintiff had acquired a farm having larger acreage than his prior farm. At the time of defendant's acts of assault and battery in July, 1962, plaintiff had a herd of 14 dairy cows but testified he would like to have increased his herd to 25 cows. He further stated that because of his knee condition he was unable to do the increased farm work which would be necessary to care for 25 cows. He estimated his annual net profit per cow at about $50. On this appeal plaintiff attempts to justify the $10,000 damage award on the basis of the larger profit which he would realize from a herd increased by 11 cows during the twenty-two years which plaintiff had before reaching age sixty-five. However, there was no testimony of any effort on his part to increase his herd between January and July, 1962; of his ability financially to have so increased his herd; or whether his barn was large enough to have accommodated such a herd.

Plaintiff testified that his knee condition caused him difficulty in climbing ladders. However, it was established that since July, 1962, he has daily climbed the eight-foot

ladder from the basement of his barn to the haymow above, used a ladder in painting his house, and also used a ladder in helping a neighbor repair a roof. Plaintiff also testified that his knee condition interfered with his walking, but this was disputed by the testimony of disinterested witnesses.

We deem significant the fact that plaintiff's total medical bills were only $46 and a considerable part of that amount was for X rays. He never sought medical treatment after his second visit to Dr. Krueger in October, 1962. Furthermore he did not request any medication for pain nor was any prescribed. While these factors do not disprove plaintiff's testimony that he did suffer pain, they do raise a serious doubt that plaintiff is suffering from a permanent disability of a character that would justify an award of $10,000 compensatory damages.

The summons and complaint commencing the action were served on January 18, 1963, some six months after defendant's assault and battery of plaintiff. This complaint alleged compensatory damages in the sum of $3,500. After plaintiff's examination by Dr. Krueger shortly before trial on September 13, 1963, the complaint was amended so as to allege permanent disability and to allege compensatory damages in the amount of $25,000.

After a careful review of the record we have the feeling that the award of $10,000 compensatory damages constitutes a miscarriage of justice. However, if the trial judge had approved of this award of damages on motions after verdict, this is not a case where we would be inclined to substitute our judgment for his, inasmuch as he had the opportunity to personally have observed plaintiff and the other witnesses who testified. Here not only did the trial judge not approve the award, but he expressly found the same to have been excessive.

Therefore, we conclude that a new trial should be ordered in the interest of justice with an option being extended to

plaintiff to accept judgment for such reduced amount below $10,000 as the trial court shall determine would reasonably compensate plaintiff for his damages.

*By the Court.*—Order reversed and cause remanded for the entry of a proper order for new trial with an option to plaintiff to accept judgment in a reduced amount in lieu thereof in accordance with this opinion. No costs shall be taxed by either party on this appeal.