DOUGLAS, and wife, Respondents, v. JOHNSON, and wife, Appellants.

*No. 75–398. Submitted on briefs March 8, 1978.—Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 300.)

For the appellants the cause was submitted on the briefs of *D. G. Graff* of Madison.

For the respondents the cause was submitted on the brief of *Daniel W. Hildebrand, Thomas B. Solheim* and *Ross & Stevens, S. C.,* of Madison.

HEFFERNAN, J. This is an appeal from a judgment which granted the plaintiff buyers, Charles and Bonnie Douglas, judgment declaring their rights under a land contract. Charles and Bonnie Douglas, hereinafter referred to as buyers, purchased a farm from Ervin and Phyllis Johnson, hereinafter referred to as sellers.

The land contract was entered into for the sale of a 330-acre dairy farm and was executed by the parties on November 4, 1968.

The contract entered into is a land contract known as a "milk contract" or a "product-payment contract." Contracts of this type have been proposed by the University of Wisconsin College of Agriculture as a means of protecting a farm buyer against adverse economic conditions and as protection to a seller against inflation. The land contract contemplated that payments be made by the payment of the gross proceeds of the sale of 935 pounds of milk per day for a period of twenty years. Proceeds were to be paid to the sellers monthly.

The initial valuation or purchase price of the farm was set at $200,000. Purchasers made a down payment of $10,000, leaving a balance of $190,000 due on the purchase price. It appears that the original computation, by which it was agreed that 935 pounds per day of milk was to be allocated to the payment of the contract, was based upon the then agreed price of milk at $4.85 per hundredweight. It was clearly understood by both parties that, in the event the price of milk would increase, the buyers would become obligated to pay a larger sum in dollars for the farm. Conversely, were the value of milk to fall, a

smaller sum in dollars would be required to pay for the farm. This understanding was based on the assumption that the value of farm land fluctuated in a reasonably direct relationship to the value of the milk produced on the farm.

Although the contract was basically prepared by Ervin Johnson, the seller, who was also an attorney, the contract was only executed after the buyers received legal advice. At the insistence of the buyers, prepayment clauses were inserted in the contract. These prepayment clauses provide:

"14. The Buyers shall have the right to prepay any part or all of the contract at the end of any calendar year. The amount of the prepayment shall be used to reduce the length of time that payments are to be made. In other words, if prepayments are made, it will reduce the number of years that payments shall be made from twenty years to a lesser period. In computing the amount of such reduction, milk shall be figured at the average price for the calendar year in which the prepayment is made and consideration shall also be given to the fact that the payment is being made at that time and not at the end of the period and thus the Buyers shall be credited with the interest factor figured at 6% per year. If in the year prepayment is made, the proceeds from 935 pounds of milk per day for the year has amounted to $15,000.00 and if the additional payment for that year would be $5,000.00, then the twenty year requirement shall be reduced by ⅓ of a year. In addition thereto the buyers shall receive the further credit which would be due them by reason of the facts that the Sellers would be receiving the use of this additional payment for the years remaining.

"15. If for any reason it is necessary to compute the balance remaining due on this contract at any particular time during the life of this contract, it shall be determined by figuring the price of milk at the average amount received by the said Ervin W. Johnson under the terms of this contract for the previous 12 months and multiplying this by the 935 pounds per day as required, times the remaining period in which the contract

has to run. However, this figure shall be reduced by discounting at the rate of 6% per year to compensate for the fact that the payment is being figured presently rather than being paid over a period of years."

After the buyers took possession of the property, payments were made in accordance with the contract for a period of five years. In December of 1973, at the end of the fifth year of the term of the land contract, the buyers sought to pay off the entire balance pursuant to the prepayment clauses set forth in paragraphs 14 and 15 of the land contract.

The buyers and sellers were unable to reach an agreement on the amount owed; and in February of 1974, the buyers brought an action asking a declaration of their rights under the prepayment clauses. Basically, they ask that the court declare the method of calculating the amount which they were required to pay the sellers in full satisfaction of their obligations under the land contract. Particularly, they ask for a resolution of the amount due in the event of the prepayment of the balance.

Over the objections of the sellers, the action was tried before a jury. Each of the parties acknowledged that, in the event of prepayment, the amount due was to be determined by discounting the balance at the rate of six percent.

The buyers' basic theory involved the use of a single-payment formula, that is, that the pay-off amount should be calculated by first multiplying the assumed monthly payment by the number of months remaining on the contract. The result of this calculation, they contend, would result in the total amount to which the discount factor should be applied. This figure was approximately $344,-000. The buyers then, by discounting the single payment at six percent, fifteen years in the future, and by using a single-payment discount table, arrived at a resultant pay-out figure of approximately $144,000.

The sellers took the position that it was appropriate to use a monthly-annuity pay-off calculation, and they claimed that the pay-off amount must equal the present value of a series of payments for the remaining one hundred eighty months of the contract at an interest rate of six percent. The sellers argued that the pay-off amount would be that amount which, if deposited at one-half percent per month compounded interest, would allow the withdrawal of $1,915.48 a month for the remaining term of the contract and would result in a sum which, if so withdrawn, would reduce the balance to zero at the end of the term. If the calculations urged by the sellers were to be adopted, the sum due for prepayment purposes would be approximately $227,000, a difference of $83,000 more than the buyers' figure.

Each side presented witnesses whose testimony tended to support its point of view. The buyers' witnesses included a certified public accountant, a real estate broker, and one of their prelitigation attorneys who had been consulted in the preparation of the contract. The sellers' experts were a University of Wisconsin professor of finance and economics and a bank official.

Each set of experts supported the basic approach of the parties who called them. The general meaning of the term, "discount," was not in dispute, and each set of witnesses used substantially the same mathematical formula in arriving at the ultimate figure. However, the buyers insisted that the prepayment sum be computed on the basis of a single-payment calculation, while the sellers' experts insisted that it was appropriate to base the calculation on a monthly series of payments.

As stated above, the sellers' counsel insisted that the determination of the obligation under the contract should be decided by the court without recourse to a jury, because the contract was unambiguous. He implicitly argued, to the extent that any legal ambiguity existed, that

such ambiguity should be resolved from the contract itself as a matter of contract interpretation and as a matter of law. The trial judge rejected that contention and submitted the matter to the jury.

■

While we think it appropriate for the trial judge to have heard the testimony of the experts in respect to the meaning of the terms used in the contract, we conclude that, under the circumstances, the matter should not have been submitted to the jury.

The special verdict contained four questions, the following two of which are pertinent to this appeal:

"1. Is the prepayment sum the amount which if invested for a 15 year period at the agreed rate of interest would yield one payment equal to the payments for the fifth calendar year multiplied by the 15 years remaining?"

Answered by the jury: "Yes."

"2. Is the prepayment sum the amount which if invested at the agreed rate of interest, would yield a series of monthly payments each equal to the agreed monthly contract payment for the 15 years remaining?"

Answered by the jury: "No."

By answering "yes" to the first question and "no" to the second question, the jury adopted the theory of the buyers, which resulted in a judgment which would permit the buyers to pay off the land contract for the sum of approximately $144,000.

■

We conclude, while it was appropriate for the trial judge to have heard the testimony of each of the set of experts to aid in his understanding of the terms of the contract, that it was inappropriate for the trial judge to have left the complete resolution of the lawsuit to the almost unguided discretion of the jury. The judge's in-

structions were not of the kind that would be calculated to be particularly helpful to the jury in the resolution of the issues. They were primarily boilerplate in nature in respect to burden of proof and credibility of witnesses.

As we view the record in this case, we are satisfied that the question should have been resolved by the court as a matter of law, primarily upon the terms and language of the contract as incorporated therein. It is difficult to see that a jury's determination would be helpful in the resolution of this question.

We have said, even in cases where a legal matter has inappropriately been submitted to a jury, that we would affirm if we were able to conclude that the jury had in fact reached a correct conclusion. *Martineau v. Steele,* 14 Wis. 295, *272 (1861). We have also, in some instances, sustained a judgment which resulted from a verdict improperly submitted to a jury where there was evidence that the trial judge had in fact approved the jury verdict in such a way that he had adopted its findings as his own. *See, Central Lithographing & Engraving Co. v. Moore,* 75 Wis. 170, 43 N.W. 1124 (1889); *Jolin v. Oster,* 55 Wis.2d 199, 198 N.W.2d 639 (1972). On the other hand, in *Thurston v. Burnett & Beaver Dam Farmers' Mut. Fire Ins. Co.,* 98 Wis. 476, 74 N.W. 131 (1898), we concluded, where the trial court improperly submitted the issue of the construction of a contract to a jury, the judgment should be reversed and the cause remanded.

It is apparent from past cases decided by this court that it is within the power of this court, if we think the record sufficient, to determine matters of law in a contract dispute *ab initio* in a case where the matter was inappropriately submitted to the jury. We have also affirmed verdicts where they have received the imprimatur of a judge's post-verdict review which substantially fulfilled the requirement that, in cases tried to the court,

there be findings of fact and conclusions of law which could be appropriately reviewed by this court on appeal.

In the instant case, however, we find that the trial judge denied the motions after verdict with no comment other than a bare bones approval of the jury's verdict. The legal basis on which he made that determination cannot be gleaned from the record. Moreover, his instructions to the jury were so limited in scope that it is impossible to determine the legal basis for the jury's verdict. The judge, by his instructions, forced the jury to a choice between two alternative theories but afforded it no rational basis for reaching a conclusion. Its conclusion was based, not upon any legal precepts or guidelines which they were required to follow, but rather upon their uninstructed appraisal of the witnesses' credibility.

This appeal presents issues of sufficient complexity that we are satisfied that the trial judge should have assumed the responsibility of preparing careful findings of fact, to the extent that the facts were disputed. To the extent that they were not disputed, there should have been a careful recitation of the facts upon which his conclusions of law might be based.

The trial judge, by his determination to submit the case to the jury, indicated that the testimony of the witnesses, their demeanor, their reputation, and their credibility were critical in the resolution of this case. While our examination of the record does not fully comport with that appraisal—since it appears that essentially the different sets of witnesses were propounding different legal or business usage theories—we think, under the circumstances, that this court should not at this juncture make the determination solely on the basis of the language of the contract. To the extent that the testimony of the witnesses is relevant and to the extent to which credibility is a factor, the initial determination should be

made by the appropriate trier of the fact, in this case the trial judge.

We accordingly vacate the verdict and judgment and remand the cause to the trial judge for further proceedings as he may deem appropriate. He may in his discretion determine the case on the record as it now exists or he may, if he deems it advisable, permit the calling of additional witnesses. The parties should be afforded the opportunity to present arguments to the trial judge on the basis of the record as it now exists or as it may be supplemented. In any event, the complexities of this cause of action require that the trial judge make findings of fact and conclusions of law. In addition, an opinion should be filed, so that a meaningful review can be undertaken in the event that either party is aggrieved by the subsequent judgment.

*By the Court.*—Verdict and judgment vacated, and cause remanded for further proceedings consistent with this opinion.