JOS. P. JANSEN COMPANY, INC., a domestic corporation,
Plaintiff-Appellant-Petitioner,

v.

MILWAUKEE AREA DISTRICT BOARD OF VOCATIONAL, TECH-
NICAL & ADULT EDUCATION, a government unit,
Defendant-Respondent.

Supreme Court

*No. 79–1996.  Argued October 7, 1981.—*
*Decided December 1, 1981.*

(Also reported in 312 N.W.2d 813.)

1

For the petitioners there were briefs by *Dominic S. Amato, Aaron Belongia* and *Fiorenza, Weiss, Amato, Hodan & Belongia, S.C.,* of Milwaukee, and oral argument by *Dominic S. Amato.*

For the defendant-respondent there was a brief by *John A. Casey, Mary Pat Koesterer* and *Quarles & Brady* of Milwaukee, and oral argument by *Ms. Koesterer.*

COFFEY, J.   This is a review of a decision of the court of appeals affirming a judgment of the circuit court for Milwaukee county, HON. PATRICK J. MADDEN, presiding. The judgment dismissed the claim of the plaintiff-appellant-petitioner, Joseph P. Jansen Company, Inc., (Jansen) and awarded $17,910.75 to the defendant-respondent, Milwaukee Area District Board of Vocational, Technical and Adult Education (MATC) on its counterclaim. This case involves the application of a written construction contract to a dispute over credits and extras for work done and materials used in filling an excavation (hole) in a building site. Jansen, a building contractor, claimed it was entitled to additional compensation for alleged "extra work" performed under the written construction contract in filling the excavation, and MATC, the owner, claims it is entitled to a credit on its payments to Jansen because of Jansen's substitution of materials used as fill. The trial court construed the contract as a matter of law and granted MATC's renewed motion for directed verdict after a jury verdict was rendered in favor of Jansen.

On January 29, 1975, MATC awarded a contract to Jansen to perform general construction work at MATC's South Campus in Oak Creek, Wisconsin. As part of the contract, Jansen agreed to perform certain earthwork, the specifications for which were contained in Sec. 2200 of the "Project Manual" which is a part of the contract. Jansen's contract did not cover all the earth and grading work at the construction site. A separate and earlier contract for "site grading" had been awarded to Stoehr Grading, another contractor. The work Stoehr was to perform was specified in Sec. 2210 of the Project Manual and was to be completed before Jansen could perform any work under the contract. The contractual requirements for Jansen's portion of the earthwork set out in Sec. 2200 were described with reference to the grading work already completed by Stoehr under Sec. 2210. A copy of Sec. 2210 was furnished to Jansen prior to the preparation of its bid, along with an original survey of the site and other information pertinent to the bid. Jansen visited the contruction site prior to submitting its bid and at that time, Stoehr had completed its share of the work relevant to this dispute.

Under Sec. 2210, Stoehr was required to strip all topsoil from the land on which the building was to be erected.[1] Performance of this requirement left a depressed area known as a swale at the building area of the MATC South Campus known as the TI South Wing. Before the building could be constructed, this swale had to be filled with material of sufficient stability to bear the weight of the building. Jansen raised the question of responsibility for filling the swale at a meeting held on

[1] Sec. 2210 (6) (A) states in part as follows:

"A. Prior to any grading operations, this Contractor shall strip topsoil, if any, to its entire depth or max. of 18″ for all areas except building area. At building area and for distance of 5′–0″ beyond strip topsoil to its entire depth. . . ."

March 5, 1975. The architect for MATC responded in a letter indicating that Jansen was obligated to fill the swale area under the express terms of the contract. Jansen stated that it performed the work in order to allow construction to proceed, but maintained that it performed "extra work" not contemplated by the contract when it excavated unsuitable soil from the swale area and placed suitable fill in the area to bring the grade to proper elevation. At no time, however, did Jansen request or receive a change order for the swale work.

After being informed by MATC's architect that it was responsible to fill the swale area, and before proceeding with construction, Jansen requested permission to substitute "site fill" for "engineered fill" as specified in the contract. A substantial amount of fill was required to bring the swale area to the required elevation. Site fill was considerably less expensive than engineered fill and met relevant contract specifications. MATC agreed to the substitution of fills but there is conflicting evidence as to whether an agreement was reached to credit MATC with the cost savings resulting therefrom. However, a conference memorandum prepared by MATC's architect indicates that at the meeting held on June 9, 1975, Jansen conceded that there was a value difference between the site fill and select fills and agreed to submit the question to arbitration to determine the amount of credit due the owner, if an agreement could not be reached with the architect.

Jansen and MATC failed to resolve their dispute over the responsibility for excavating and filling the swale area; and, in November of 1977, two years after completion of the building project, Jansen brought this action seeking a reimbursement of $14,625 for the alleged "extra work" it performed. MATC counterclaimed for a

credit of $17,910.75 on the contract price due Jansen based on the cost savings resulting from the substitution of fill materials.

The case was tried to a jury on April 16th through 18th, 1977. At the close of plaintiff's case, MATC moved for dismissal, arguing that liability was determinable solely from the contract. Before submission to the jury, MATC also moved for a directed verdict on the same grounds. The court reserved ruling on each of these motions and submitted the case to the jury. On April 19, 1979, the jury returned a verdict in favor of Jansen. On October 24, 1979, more than 180 days after the jury rendered its verdict, the trial court granted MATC's motion for a directed verdict and set aside the jury verdict. Judgment was entered on November 29, 1979, awarding MATC the sum of $17,910.75 on their counterclaim.

Jansen appealed this decision, arguing that MATC's motion for directed verdict should be denied because the trial court did not enter its order granting the motion within the time period specified in sec. 805.16, Stats. (90 days) and, further, that there was credible evidence to support the jury verdict. The court of appeals affirmed the trial court's judgment, holding that the failure of the trial court to render a timely decision on MATC's motion was not prejudicial and that the terms of the contract were not ambiguous and thus they required Jansen to excavate and fill the swale.

*Issues:*

1. Did the trial court commit prejudicial error in failing to act on MATC's motion for a directed verdict within 90 days of the verdict?

2. Did the court of appeals err in holding that the construction of the construction contract was solely a question of law reviewable *ab initio* by that court?

## Timeliness

Sec. 805.16, Stats., expressly requires that an order granting or denying a motion challenging the sufficiency of the evidence, or for a new trial, must be entered within 90 days of the verdict or the motion shall be deemed denied.[2] Pursuant to the provisions of sec. 805.14, motions to dismiss made at the close of plaintiff's case and motions for directed verdict are motions challenging the sufficiency of evidence as that term is used in ch. 805, Stats.[3] In this case, more than five months

---

[2] Sec. 805.16, Stats., provides in part as follows:

"**Time for motions after verdict.** Upon rendition of verdict, the judge shall in open court set dates for serving and filing motions and briefs and for arguing motions. No notice of motion need be served for motions after verdict. The dates for hearing arguments on motions shall be not less than 10 nor more than 60 days after verdict. If an order granting or denying a motion challenging the sufficiency of evidence or for a new trial is not entered within 90 days after verdict, the motion shall be deemed denied. . . ."

It should be noted that sec. 801.15(2)(b), Stats., allows this ·time period to be extended for good cause if the order extending the time period is made prior to the expiration of the initial decision period. In this case, the court did not enter such an order extending the time period.

[3] Sec. 805.14, Stats., provides in part as follows:

"**Motions challenging sufficiency of evidence; motions after verdict.**

". . .

"(3) MOTION AT CLOSE OF PLAINTIFF'S EVIDENCE. At the close of plaintiff's evidence in trials to the jury, any defendant may move for dismissal on the ground of insufficiency of evidence. If the court determines that the defendant is entitled to dismissal, the court shall state with particularity on the record or in its order of dismissal the grounds upon which the dismissal was granted and shall render judgment against the plaintiff.

"(4) MOTION AT CLOSE OF ALL EVIDENCE. In trials to the jury, at the close of all evidence, any party may challenge the sufficiency of the evidence as a matter of law by moving for directed

passed from the day the jury rendered its verdict before the trial court entered its decision granting MATC's motion for a directed verdict. Thus, the trial court erred in not taking timely action on MATC's motion and pursuant to the provisions of sec. 805.16, the motion should have been deemed denied after the expiration of the 90-day time period.

On review of this case, the court of appeals acknowledged the error but held "that the defendant was not prejudiced."[4] Jansen argues that this holding was erroneous as it disregarded established case law applying the time limitation for deciding motions after verdict.

The effect of an order entered after the expiration of the 90-day time limit set out in sec. 805.16, Stats., is a question of first impression. Several decisions of this court, however, have discussed the effect of an order entered after the passing of the 60-day time limit contained in the predecessor statute to sec. 805.16.[5]

---

verdict or dismissal or by moving the court to find as a matter of law upon any claim or defense or upon any element or ground thereof.

"(5)

' (d) MOTION FOR DIRECTED VERDICT. A party who has made a motion for directed verdict or dismissal on which the court has not ruled pending return of the verdict may renew the motion after verdict. In the event the motion is granted, the court may enter judgment in accordance with the motion."

[4] Jos. P. Jansen Company, Inc. v. Milwaukee Area District Board of Vocational, Technical and Adult Education, Unpublished Opinion (Ct. App.) December 19, 1980, Slip Op. at 3.

[5] Sec. 270.49(1), Stats. 1973, reads as follows:

"**Motion for new trial.** (1) A party may move to set aside a verdict and for a new trial because of errors in the trial or because the verdict is contrary to law or to the evidence, or for excessive or inadequate damages or in the interest of justice; but such motion must be made and heard within 2 months after the verdict is rendered, unless the court by order made before its expiration extends such time for cause. Such motion, if not decided within the time allowed therefor, shall be deemed overruled.

"The verdict was returned by the jury on March 22, 1962, so that the sixty-day period within which the circuit court might have entered an order for a new trial, absent any order extending time, expired on May 21, 1962. The circuit court's memorandum opinion was not rendered until June 8, 1962, and the order for new trial was not entered until July 17, 1962. Thus the circuit court's order for a new trial is void for lack of jurisdiction because not entered within the statutory period. *Alberts v. Rzepiejewski* (1962), 18 Wis. (2d) 252, 256, 257, 118 N.W. (2d) 172, 119 N.W. (2d) 441; *Volland v. McGee* (1941), 236 Wis. 358, 363, 294 N.W. 497; *Urban v. Anderson* (1940), 234 Wis. 280, 283, 284, 291 N.W. 520; and *Bankers Finance Corp. v. Christensen* (1923), 181 Wis. 398, 195 N.W. 319." *Hurst v. Hungerford*, 19 Wis. 2d 537, 539, 120 N.W.2d 727 (1963).

The purpose of this court's strict application of the time limit for deciding motions after verdict has been summarized as seen below:

". . . If its purposes are to be accomplished, its unambiguous terms must be complied with. Starting with sec. 2878, Stats. 1898, and giving consideration to the several amendments thereto, it is clear that the legislature and this court, in the exercise of its rule-making powers, intended that litigation be expedited and that unreasonable delays in deciding motions after verdict be prevented." *Beck v. Wallmow*, 226 Wis. 652, 657, 277 N.W. 705 (1938).

This purpose is equally applicable to the time limits established in sec. 805.16, Stats. The Judicial Council stated its intent in proposing sec. 805.16 was "to prevent unnecessary protraction of litigation."[6] This is the same

---

In case judgment is entered without deciding a pending motion for a new trial, the supreme court may direct the trial court to determine such motion within 2 months after filing the remittitur in the trial court.

[6] Judicial Council Committee's Note to sec. 805.16, Stats.

purpose attributed to sec. 270.49(1) as seen in the quotation above. Since the two statutes have the same purpose, we hold that our prior determination that it is error to enter an order after the expiration of the time limit of sec. 270.49(1), Stats. 1973, is applicable to orders entered after the expiration of the time limit of sec. 805.16. The decision granting MATC's motion for directed verdict, therefore, is void as the court lost competency to exercise its jurisdiction (formerly referred to solely as the "loss of jurisdiction")[7] to decide the motion for directed verdict and the motion to dismiss after the expiration of the 90-day time limit.

In ruling the error of the trial court was not prejudicial to the defendant, the court of appeals addressed the wrong question. An order that is adverse to a party and is made after the court has lost the capacity to exercise its jurisdiction is, without a doubt, prejudicial to the party aggrieved. However, cases decided under sec. 270.49(1), Stats. 1973, make it eminently clear that when a trial court tardily attempts to decide a motion over which it has lost competency to exercise jurisdiction, an appellate court is not foreclosed from invoking its power under secs. 751.06 and 752.35, formerly sec. 251.09, Stats. 1975, in the interest of justice to accomplish the same result that the trial court attempted to accomplish but was unable to because of its loss of the capacity to exercise jurisdiction.

"In a situation such as this, where the trial court has determined that a new trial should be had in the interest

---

[7] The use of the phrase "lost competency to exercise jurisdiction" is more grammatically correct than the former use of the phrase "lost jurisdiction" as under the provisions of sec. 801.04, Stats., it is now clear that "nothing in chs. 801 to 849 affects the subject matter jurisdiction of any court. . . ." Thus, the 90-day time limit of sec. 805.16 more accurately deprives the court of the competency to exercise its discretion.

of justice but the court's decision or order for a new trial is ineffective because of failure to comply with the requirements of sec. 270.49, Stats., this court deems it its duty to review the record to determine whether it should exercise its discretion under sec. 251.09 to order a new trial in the interest of justice." *Graf v. Gerber,* 26 Wis. 2d 72, 76, 131 N.W.2d 863 (1965). *See also: Dupler v. Seubert,* 69 Wis. 2d 373, 381, 230 N.W.2d 626 (1975).

In *Graf v. Gerber, supra,* we applied the procedure described in the quotation above and ordered a new trial to prevent a miscarriage of justice in the case where the trial court was without competency to exercise its jurisdiction to enter such an order because the statutory time limit for ordering a new trial had expired. We exercised our discretionary powers in a similar manner in *Looman v. Milwaukee Mutual Ins. Co.,* 38 Wis. 2d 656, 158 N.W.2d 318 (1968).

We deem it appropriate to adopt a similar procedure where an order of the trial court is ineffective for failure to comply with the 90-day time limit of sec. 805.16, Stats. Unlike former sec. 270.49, Stats. 1973, sec. 805.16 applies to motions challenging the sufficiency of the evidence in addition to motions for a new trial. The time limit which formerly restricted the power of the trial court to deal with motions for a new trial now restricts the power of the trial court to deal with all post verdict motions challenging the sufficiency of the evidence as well as those seeking a new trial on other grounds. Because of this difference in the scope of the revised statute, it is appropriate for this court to review the record under sec. 751.06 to determine whether it is proper to direct a judgment in the case where the void trial court order granted a motion challenging the sufficiency of the evidence.

Although the decision of the trial court granting the motion for directed verdict is void, prior decisions of this

court indicate that the reasoning of the trial court can be considered on review of the record. *Spath v. Sereda,* 41 Wis. 2d 448, 451, 164 N.W.2d 246 (1969). *See also: Dupler v. Seubert, supra,* at 384. While the trial court's decision can be taken into consideration, we have held that this court need not exercise its independent discretion, pursuant to sec. 751.06, Stats., in every case in which we would be compelled to find no abuse of discretion on the part of the trial court in attempting to rule on the motions but in which the order is found to be defective for noncompliance with sec. 805.16. Rather, we should invoke our discretion only where we are convinced that there has been a probable miscarriage of justice if the jury's verdict were permitted to stand. *Tuschel v. Haasch,* 46 Wis. 2d 130, 138, 174 N.W.2d 497. As we explained in *Cary v. Klabunde,* 12 Wis. 2d 267, 107 N.W.2d 142 (1961) :

". . . However, this court should not exercise its independent discretion to direct a new trial in every instance where we would be compelled to find no abuse of discretion on the part of the trial court in attempting to direct a new trial in the interest of justice, but in which the order is found to be defective for noncompliance with sec. 270.49(2). Our discretionary power in this respect should be sparingly employed, and ought not to be invoked except in a situation where we are convinced that there has been a probable miscarriage of justice if the jury's verdict were permitted to stand. . . ." *Id.* at 270–71.

This principle is equally applicable where, as here, the court reviews the record to determine whether to direct a judgment where the trial court has lost competency to exercise its jurisdiction to rule on motions challenging the sufficiency of the evidence. With these rules in mind, we review the record to determine whether there will be a probable miscarriage of justice if the construc-

tion of the contract made by the jury is permitted to stand.

The court of appeals held that the contract language in unambiguous terms required Jansen to excavate and fill the swale. If correct, this holding would require that the contrary jury verdict be set aside and that judgment be granted to MATC on its counterclaim, because a judgment entered on the verdict otherwise would create a miscarriage of justice.

*Construction of the Contract*

It is well established that absent ambiguity requiring resort to extrinsic evidence, the construction of a written contract presents a question of law solely for the court's determination. *Pleasure Time, Inc. v. Kuss,* 78 Wis. 2d 373, 379, 254 N.W.2d 463 (1977). It is the duty of the trial court to construe the terms of the contract instead of leaving the question as to its proper construction to the jury. This was noted in *Martineau v. Steele,* 14 Wis. 295, (*272) (1861) in which we stated:

"We suppose there can be no doubt that it was the duty of the county court to construe this written agreement, instead of leaving the question as to its proper construction to the jury." *Id.* at 300.

Similarly, we held in *Douglas v. Johnson,* 83 Wis. 2d 531, 266 N.W.2d 300 (1978):

"As we view the record in this case, we are satisfied that the question should have been resolved by the court as a matter of law, primarily upon the terms and language of the contract as incorporated therein. It is difficult to see that a jury's determination would be helpful in the resolution of this question." *Id.* at 537.

We agree with the holding of the appellate court that the terms of the contract are unambiguous and thus Jan-

sen was required to excavate and fill the swale. Section 2200(4)(B) of the Project Manual required Jansen to perform the balance of the required excavation.[8] In addition, Section 2200(3)(A)[9] indicated that the stripping of topsoil within the building area was done under Section 2210 of the project manual. Reading Section 2210 (6)(A) together with the survey, boring tests and other materials provided to all bidders on the project, Jansen, upon proper inspection and evaluation by a qualified engineer, should have determined that stripping of the topsoil would have a swale in the building area.[10] Section 2200(8)(B) & (C) and Section (9)(A) & (B)[11]

[8] Section 2200(4)(B) reads as follows:
"Balance of required excavation shall be done under this Section."

[9] Section 2200(3)(A) reads as follows:
"Clearing and stripping of topsoil within grading limit line was done under Section 2210. Clearing and stripping of topsoil as specified in 2C above shall be done under this Contract."

[10] Section 2210(6)(A) reads as follows:
"Prior to any grading operations, this Contractor shall strip topsoil, if any, to its entire depth or max. of 18" for all areas except building area. At building area and for distance of 5'-0" beyond strip topsoil to its entire depth. Stockpile topsoil where directed and protect from instrusion of foreign matter. Maintain topsoil relatively free of weeds. Use weed killer as required."

[11] Sections 2200(8)(B) & (C) and 9(A) & (B) read as follows:
"(B) All topsoil has been removed and building excavated to 1'-0" below floor slab under Section 2210. Compaction to within 5'-0" of building was done under Section 2210.

"(C) Compaction required where fill of 2'-0" or more is required within building for distance 5'-0" outside of building lines and for compacted areas at building disturbed by construction. Fill required shall be gravel as specified herein.

"(A) Do all filling and backfilling and grading to area outside of building to required subgrade. Grades indicated on drawings are finished grades. Allow 5" for topsoil and one inch for lawns to be placed under Lawns Contract. See drawings for other subgrades. Provide extra material for backfill if required.

obligated Jansen to fill and compact the swale area and Section 2200(10)(A) indicated the type of materials required for fill. Thus, in preparation of its bid, Jansen should have known that the swale area would exist and that it was required to fill this depression. A more thorough inspection of the building site and closer examination of the unambiguous terms of the contract would have made this obligation apparent to Jansen and it should have formulated its bid accordingly.

In addition to these express provisions, the Instructions to Bidders, which are part of the contract, required Jansen to examine all drawings to determine the work covered in his contract as he would be required to do all the work "shown on the drawings, specified in the contract or reasonably implied as necessary."[12] The instructions also required the bidder to visit the site to compare specifications with work in place and Jansen complied with the instruction and visited the site to compare the work completed as of that date with the contract

---

"(B) The placing and compaction of fill under slabs after foundation walls are in place shall be coordinated with the backfilling against the outside of the walls. Place backfill around walls in horizontal layer max. of 1'–0" deep and compact as required to prevent after settlement.

"1. Deposit Select Fill on each side of piers, walls and free standing structure simultaneously to approx. same elevation. Make proper provisions to prevent wedging action against structure. Deposit so that walls filled on both sides will not have differential greater than 1'–0" between levels on each side."

[12] Section 2154(2)(A) reads as follows:

"Each bidder shall read Instructions to Bidders, Conditions of Contract, General Requirements, and Specifications, all of which are part of the Project Manual and contain provisions applicable to successful bidder. He shall also examine all drawings, as successful bidder will be required to do all work belonging to his Contract, which is either shown on drawings, mentioned in his specifications, or reasonably implied as necessary to complete his contract."

specifications.[13] More importantly, under Section (5) (A) of the instructions, the contract provided that Jansen was required to bring any discrepancies or doubts as to the meaning of the contract to the attention of MATC prior to submitting its bid in order for clarification. Although Jansen did question its obligation to fill the swale area under the contract, they did *not* raise this question prior to submitting their bid and being awarded the contract. In light of all the cited contract provisions, it is clear that the language of the contract imposes the obligation on Jansen to fill the swale area with the specified materials in unambiguous terms.

When MATC allowed Jansen to substitute the materials used as fill in the building area, they became entitled to a reduction in the contract sum under the General Conditions of the Contract for Construction, Article 13.3.1. Jansen's bid was required to, and did, set out unit prices for these different materials to be used in calculating the credit due MATC on the contract price. The amount of $17,910.75 is the correct amount of the credit due MATC based upon the bid figures.

Our holding that the contractual provisions involved in this case are unambiguous compels the conclusion that the matter should not have been submitted to the jury under the circumstances although it was appropriate for the trial judge to have heard testimony with respect to the meaning of the terms used in the contract.

We hold that under the unambiguous terms of the contract, Jansen was obligated to excavate and fill the swale

---

[13] Section 2154(2)(C) reads as follows:

"Unless otherwise specifically mentioned in various Sections of the Specifications, base bids upon assumption that work will be performed during regular working hours. Owner requests firm lump sum Base Bid for work contemplated and as covered by these specifications and accompanying drawings."

area with the materials specified under the reformed contract and when Jansen's request to substitute the fill materials was approved, MATC was entitled to a credit from Jansen on the contract price. Accordingly, we conclude that it would be a miscarriage of justice to remand this case for the entry of a judgment on the jury verdict and thus we exercise our discretionary powers under sec. 751.06, Stats., and direct the entry of judgment in favor of defendant, MATC, on its counterclaim and the dismissal of Jansen's complaint.

*By the Court.*—The decision of the court of appeals is reversed, the judgment and order of the circuit court are reversed and cause remanded for entry of judgment in accordance with this opinion.