VOELTZKE and husband, Appellants, V. KENOSHA MEMORIAL HOSPITAL, INC., Respondent.

*No. 25. Argued December 1, 1969.—Decided December 19, 1969.*
(Also reported in 172 N. W. 2d 673.)

For the appellants there was a brief by *Shearer &
Shearer* of Kenosha, and oral argument by *Conrad J.
Shearer*.

For the respondent there was a brief by *Heide, Sheldon,
Hartley, Thom & Wilk* and *S. Michael Wilk*, all of
Kenosha, and oral argument by *S. Michael Wilk*.

BEILFUSS, J.   The issues are:

(1)   Does the Wisconsin safe-place statute apply to the
parking lot of the defendant hospital?

(2)   Is a social visitor of a patient in a hospital an
invitee or a licensee of the hospital?

(3)   Are the plaintiffs entitled to a new trial in the
interest of justice?

Our safe-place statute, sec. 101.06, provides:

**"Employer's duty to furnish safe employment and place.**
Every employer shall furnish employment which shall be
safe for the employees therein and shall furnish a place
of employment which shall be safe for employes therein
and for frequenters thereof and shall furnish and use
safety devices and safeguards, and shall adopt and use
methods and processes reasonably adequate to render such
employment and places of employment safe, and shall
do every other thing reasonably necessary to protect
the life, health, safety, and welfare of such employes and
frequenters.   Every employer and every owner of a place
of employment or a public building now or hereafter
constructed shall so construct, repair or maintain such
place of employment or public building as to render the
same safe."

The plaintiffs do not contend that the parking lot falls
within the definition of a public building or structure
nor, in our opinion, could they successfully do so.[1]

---

[1] *See Buckley v. Park Building Corp.* (1966), 31 Wis. 2d 626,
143 N. W. 2d 493; *Rogers v. Oconomowoc* (1964), 24 Wis. 2d 308,

In *Jaeger v. Evangelical Lutheran Holy Ghost Congregation* (1935), 219 Wis. 209, 211, 212, 262 N. W. 585, it is said:

"There is a plain distinction between the obligation of an employer and the obligation of the owner of a building. The employer's duty to furnish safe employment includes the furnishing of a safe place of employment, and the employer has a broad duty not only with respect to the structure, which constitutes the place of employment, but with reference to the devices and other property installed or placed in such place. The employer's duty is carefully and specifically set forth in the first half of the section. The last portion of the section defines the duty of employers and owners with respect to the structure of the building. The duty in this respect is to construct, repair, and maintain such place of employment or such building in such a manner as to render the same safe."

The liability of the hospital under the safe-place statute, if any, for a parking lot injury must be based upon a determination that the hospital was an employer within the meaning of the statute.

The definitional provisions of ch. 101, Stats., applying to the employment relation, state:

Sec. 101.01. "(1) The phrase 'place of employment' includes every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit, . . .

". . .

"(3) The term 'employer' shall mean and include every person, firm, corporation, state, county, town, city, village, school district, sewer district, drainage district and other public or quasi-public corporations as well as any

128 N. W. 2d 640; *Ball v. Madison* (1957), 1 Wis. 2d 62, 82 N. W. 2d 894.

agent, manager, representative or other person having control or custody of any employment, place of employment or of any employe.

" . . .

"(13) The term 'owner' shall mean and include every person, firm, corporation, . . . having ownership, control or custody of any place of employment or public building, or of the construction, repair or maintenance of any place of employment or public building, . . ."

The critical factor here, place of employment, is dependent on the profit motive of the defendant hospital. This court has said that absent a showing the activities of an organization are carried on in whole or in part in pursuit of the profit motive that organization cannot be said to be a place of employment under sec. 101.01 (1), Stats. *See Haerter v. West Allis* (1964), 23 Wis. 2d 567, 127 N. W. 2d 768. The court also stated in *Haerter,* at page 570:

"The existence or nonexistence of an actual profit, of course, is not material."

In a case in which it was contended a public beach was a place of employment because the lifeguards earned a gain or profit, this court said:

"Plaintiff contends that the definition of place of employment applies because the employees work for gain, and asks us to change our previous construction that the absence of the profit motive on the part of the city prevents the place being treated as a place of employment.

"We expressly decided on the earlier appeal that 'Plaintiff's conclusion that these facilities constitute a place of employment cannot be sustained.' In so holding we followed a statutory construction of long standing that it is the profit motive of the employer to which the statute refers, not to that of the employee." *Rogers v. Oconomowoc, supra,* page 315.

In *Grabinski v. St. Francis Hospital* (1954), 266 Wis. 339, 342, 63 N. W. 2d 693, the court held that a charitable hospital did not fall within the statutory definition of a place of employment:

"The differences in scope between the duties of employers and owners of public buildings under the safeplace statute are pointed out in *Jaeger v. Evangelical Lutheran Holy Ghost Congregation*, 219 Wis. 209, 262 N. W. 585, and cases there cited. Under these decisions it is apparent that the defendant is not an employer as defined in the safe-place statute, nor is its hospital such a place of employment as referred to therein. It is, however, the owner of its hospital, which is a public building. The duty of the defendant as an owner of a public building to maintain the same has no application to temporary conditions unrelated to the structure of the building or the material of which it is composed. *Waldman v. Young Men's Christian Asso., supra; Jaeger v. Evangelical Lutheran Holy Ghost Congregation, supra; Holcomb v. Szymczyk*, 186 Wis. 99, 202 N. W. 188."

The Voeltzkes assert they should have been allowed to submit proof of the profit and employment activities of Kenosha Memorial Hospital, Inc., in order to bring the hospital within the scope of the statute. Their offer of proof consisted of the following presentation by Attorney Shearer:

"*Mr. Shearer:* All right. Well, my request and offer are these: That for the purpose of making a basis for application of the safe-place statutes to this accident, I would recall Mr. Stefani to the stand adversely, for the purpose of showing the use of the parking lot by employees of drug companies, food companies, hospital supply companies, and other companies operating for profit —concededly operating for profit—on the theory that the hospital is an owner of a place of employment used by the employees of another, for pecuniary or whatever the precise language is.

"Secondly, I would offer, through Mr. Stefani, the financial statements that he was subpoenaed to bring with him today, and which I assume he has, showing operations of Kenosha Hospital for the five years immediately preceding this accident. Those financial statements and testimony which I would expect to elicit from Mr. Stefani would show that it is the objective of Kenosha Hospital to end the fiscal year with net earnings, to earn a profit, if I may use the word in the sense of an objective of a

corporation, which has no stock and which is probably—and we have so alleged—organized under the nonprofit corporation laws of this state.

"By a pattern of operations it expects and tries, through the fixing of their charges for rooms, drugs, dressings, operating facilities, X rays, all operations of the hospital, to end up the fiscal year with earnings in excess of expenditures, for the purpose of not being dependent upon the United Fund for donations to operate.

"And I would show that for the past several years the hospital has not been dependent on the United Fund to subsidize its operations, that it does in fact end up with net earnings, which it plows back into the business and into an expansion of its facilities.

"And I would submit that proof of this sort would distinguish the Kenosha Hospital from nonprofit corporations which make no charges and which do not have that objective. So that the hospital would be an employer in charge of a place of employment, within the meaning of the safe-place statutes."

The fact that employees of other employers, such as the salesmen described in the offer of proof, use the parking lot does not make the hospital an owner of a place of employment. If the extremes of this contention were recognized as the law, a person's home would become a place of employment under the safe-place statute.

In *Waldman v. Young Men's Christian Asso.* (1938), 227 Wis. 43, 277 N. W. 632, the court indicated there might be cases in which a profit motive could be demonstrated even for charitable organizations. In noting the bifurcated objectives such an organization could possess, it was stated at pages 46, 47:

"It is our conclusion, that since the section includes within the definition of 'place of employment' only places where 'any industry, trade or business, is carried on' and 'where any person is directly or indirectly, employed by another for direct or indirect gain or profit,' is does not apply to the premises here involved. The Young Men's Christian Association is a religious and charitable institution, and that portion of its building in which the

accident happened is devoted to the charitable purposes which the organization exists to carry out. It is quite immaterial that fees are charged to cover a portion of the charitable purposes of the organization. It is likewise immaterial that a hotel or dormitory is operated for profit in another portion of the building. It may well be that as to such portion the statute applies, although it is unnecessary to pass upon that here."

The fact that the hospital organized as a nonprofit corporation did (pursuant to offer of proof) operate so as to have earnings in excess of its expenditures "which it plows back into the business and into an expansion of its facilities" does not in our opinion make it a business employing others for direct or indirect profit or gain, nor make it an employer maintaining a place of employment within the meaning of the safe-place statute.

The trial court did not err in not submitting a safe-place statute instruction to the jury.

The plaintiffs contend, as a matter of law, they were business invitees as distinguished from licensees. The court submitted the question to the jury with appropriate instructions defining the terms and duties owed to them.[2]

There is, of course, the greater duty to inspect and warn an invitee than a licensee. *See Cordula v. Dietrich* (1960), 9 Wis. 2d 211, 101 N. W. 2d 126. The definition of the duty owed to an invitee as set forth in Wis J I—Civil, Part II, 8020 was recently approved in *Smith v. Shuda* (1964), 22 Wis. 2d 629, 126 N. W. 2d 498. That instruction, 8020, provides in part:

"An (owner) (occupant-possessor) must exercise ordinary care to the end that he discover such dangerous conditions as may exist upon his premises. If an owner fails to discover a dangerous condition which was discoverable by an owner of ordinary intelligence and prudence, using that care and caution usually exercised by one in like or similar circumstances, such owner then has failed to exercise ordinary care.

---

[2] *See* Wis J I—Civil, Part II, 8010, 8011, 8015 and 8020.

"An owner having knowledge of a dangerous condition upon his premises must either correct such condition or give to an invitee coming thereon an adequate and timely warning of its existence. A failure to correct a dangerous condition, coupled with a failure to warn an invitee thereof, is a failure to exercise ordinary care."

The duty owed to a licensee is set forth in Wis J I— Civil, Part II, 8015, and summarized in *Szafranski v. Radetzky* (1966), 31 Wis. 2d 119, 126, 141 N. W. 2d 902:

"In the instant case, the Szafranskis were the social guests of the Radetzkys, and between them the duty owed was that of licensor to licensee. *Cordula v. Dietrich* (1960), 9 Wis. (2d) 211, 212, 101 N. W. (2d) 126.

"The decisions of this court hold that the possessor or occupier of premises may be liable for injuries to the licensee in two situations. The licensor may be liable because the injury was caused by a 'trap' on the premises. *Greenfield v. Miller* (1921), 173 Wis. 184, 187, 180 N. W. 834, 12 A. L. R. 982; *Cordula v. Dietrich* (1960), 9 Wis. (2d) 211, 213, 101 N. W. (2d) 126; *Brinilson v. Chicago & N. W. R. Co.* (1911), 144 Wis. 614, 618, 129 N. W. 664. He has, however, no obligation to the licensee in regard to dangers that are unknown to him.

"The licensor may, also, be liable for injury to the licensee when the injury is caused by the active negligence of the licensor. *Cermak v. Milwaukee Air Power Pump Co.* (1927), 192 Wis. 44, 50, 211 N. W. 354; *Taylor v. Northern Coal & Dock Co.* (1915), 161 Wis. 223, 229, 152 N. W. 465; *Muench v. Heinemann* (1903), 119 Wis. 441, 447, 96 N. W. 800; *Brinilson v. Chicago & N. W. R. Co.* (1911), 144 Wis. 614, 618, 129 N. W. 664."

The instructions, as given in part, define an invitee and licensee as follows:

". . . One who, by virtue of an invitation, either express or implied, goes upon the premises of another for the purpose of aiding, transacting, assisting, or furthering the business of such other, or is on such premises for a purpose of mutual advantage or benefit both to the owner of the premises and to the person entering, is in law an invitee." Wis J I—Civil, Part II, 8010.

". . . One who goes upon the premises of another with such other's permission or consent, either express or implied, for a purpose unconnected with the business of the owner, and which is of advantage or benefit only to the person coming upon the premises, or to some third person not the owner, is a *licensee*. One who goes upon the premises of another for a social visit, whether it be in a home or elsewhere, is a *licensee*." Wis J I—Civil, Part II, 8011.

We deem these instructions are a correct statement of the law and that the jury had ample credible evidence to find the plaintiffs were licensees.[3]

The plaintiffs contend the verdict is perverse because the jury awarded no damages. There is no question but that Mrs. Voeltzke was injured and did sustain some damages.

This court has indicated some displeasure with jury verdicts that fail to follow the instructions requiring them to find damages when it would be against the great weight and clear preponderance of evidence not to assess some damage figure. In *Odya v. Quade* (1958), 4 Wis. 2d 63, 73, 90 N. W. 2d 96, it was stated:

"In its order granting a new trial the court stated that the 'Verdict is perverse and reflects bias and prejudice of the jury.' It has been held that a jury's violation of instructions by not answering damage questions in a verdict where they have answered other questions so as to determine that there is no liability does not compel a trial court to treat the verdict as perverse. *Parmentier v. McGinnis* (1914), 157 Wis. 596, 147 N. W. 1007; *London G. & A. Co. v. Great Northern R. Co.* (1928), 197 Wis. 241, 248, 221 N. W. 762; *Frings v. Donovan* (1954), 266 Wis. 277, 282, 63 N. W. (2d) 105. An order granting a new trial on the ground of perversity has been reversed where based on a failure to answer damage questions. *Goelz v. Knoblauch* (1943), 242 Wis. 186, 7 N. W. (2d) 420. Because of the opportunity the trial court has to observe the trial and to sense any atmosphere of preju-

[3] *See Sandwell v. Elliott Hospital* (1942), 92 N. H. 41, 24 Atl. 2d 273.

dice, we have some doubt about the soundness of the *Goelz* decision. Because, however, there must be a new trial in this case upon several other grounds, it is not necessary to consider the matter of perversity in this case."

In *Schulze v. Kleeber* (1960), 10 Wis. 2d 540, 103 N. W. 2d 560, the court reaffirmed its doubts about the lack of perversity in the jury's finding of no damages. It was said, at pages 544, 545:

"The existence and extent of injury caused by Mr. Schulze's fall were largely questions for the jury. They may properly have considered that his damages were minor. Because Schulze admittedly sustained at least some bruises and sought medical attention for them, a wholly negative answer as to damages could not, however, be justified. 'It has been held that a jury's violation of instructions by not answering damage questions in a verdict where they have answered other questions so as to determine that there is no liability does not compel a trial court to treat the verdict as perverse.' *Odya v. Quade* (1958), 4 Wis. (2d) 63, 73, 90 N. W. (2d) 96. See *Dickman v. Schaeffer*, post, p. 610, 103 N. W. (2d) 922. Although as suggested in *Odya v. Quade, supra,* we we would now be inclined to sustain an order granting a new trial on the ground of perversity where based on a failure to answer damage questions, the circuit court did not grant a new trial here."

However, in *Binsfeld v. Curran* (1964), 22 Wis. 2d 610, 616, 126 N. W. 2d 509, we stated:

"Although there may be exceptions based on the facts, the rule generally applied is when the jury finds no negligence on the part of the defendant and there is credible evidence to support that finding, a finding of inadequate damage or no damages to the plaintiff does not necessarily show prejudice or render the verdict perverse. *Sell v. Milwaukee Automobile Ins. Co.* (1962), 17 Wis. (2d) 510, 117 N. W. (2d) 719; *Dickman v. Schaeffer* (1960), 10 Wis. (2d) 610, 103 N. W. (2d) 922. In *Schulze v. Kleeber* (1960), 10 Wis. (2d) 540, 103 N. W. (2d) 560, in discussing this rule, we pointed out a pos-

sible exception suggested in *Odya v. Quade* (1958), 4 Wis. (2d) 63, 90 N. W. (2d) 96."

In this instance the trial court passed upon the issue of perversity and declined to order a new trial.

We do not conclude, as a matter of law, that the verdict was perverse nor do we conclude the trial court abused its discretion in not ordering a new trial because of error or in the interest of justice.

*By the Court.*—Judgment affirmed.