John L. HUFFMAN,
Respondent-Appellant,

v.

Myrtle E. HUFFMAN,
Petitioner-Appellee.

Myrtle E. HUFFMAN,
Petitioner-Appellant,

v.

John L. HUFFMAN,
Respondent-Appellee.

No. 1–980A253.

Court of Appeals of Indiana,
First District.

Aug. 4, 1981.

Frank E. Spencer, Indianapolis, for respondent-appellant.

Stephen H. Free, Free, Brand, Tosick, & Allen, Greenfield, for petitioner-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

John L. Huffman, Respondent-Appellant, and Myrtle E. Huffman, Petitioner-Appellant, appeal from the February 28, 1980, decree of the Hancock Superior Court which corrected the judgment entered on September 6, 1974, in a dissolution of marriage action. We reverse.

## STATEMENT OF THE FACTS

On June 26, 1974, Myrtle filed a petition for dissolution of marriage. The trial on this petition was held on September 6, 1974, and the testimony at this trial was not recorded. The trial court entered the following judgment in the dissolution proceeding:

" . . . .

"The court further finds that said parties have entered into a Property Settlement Agreement which said agreement has been introduced in evidence in this matter and that said Property Settlement Agreement is fair and equitable and should be and hereby is approved and confirmed by the court.

"Court further finds that in carrying out the provisions of said Property Settlement Agreement, said parties have executed deeds in conformity with the provisions of said agreement and that said deeds as executed by said parties should be delivered and placed of record.

"Court further finds that as a part of said Property Settlement Agreement, Petitioner has executed an agreement to save Respondent harmless from the obligations of mortgages on the real estate and the obligation of any notes or other unsecured indebtednesses of said parties entered into during said marriage and presently outstanding and unpaid which said Save Harmless Agreement has been introduced in evidence in this matter.
" . . . ."

The Property Settlement Agreement which was approved by the court reads as follows:

"To reduce the issues in this matter said parties agree to the following distribution of property interests in the event of a decree of dissolution of marriage:

"Myrtle will:

1. Convey homeplace to John subject only to taxes

2. Relinquish all furnishings (except items in garage noted below)

3. Make no claim on John's stock, savings, checking accounts

4. Save John harmless from:

a. Mortgage obligations

b. Judgment obligations

c. Unsecured note obligations

"John will:

1. Convey to Myrtle any interest in:

a. Office property

b. North Street Apartments

c. Noble Street Apartments

d. Duplex (W. Walnut)

e. Bowman Acres Lot

f. Sweetwater Lot

2. Relinquish to Myrtle:

a. Reeves file cabinet

b. Spice cabinet

"In addition, said parties agree that each will pay his or her own attorney[']s fees."

John filed an action against Myrtle on January 8, 1976, in the Hancock Circuit Court alleging that he had an interest in the Greenfield Title Company and that his interest should be adjudicated. Myrtle then filed her "Verified Motion for Interpretation of Decree of Dissolution of Marriage or in the Alternative for Relief from Judgment" on July 19, 1979. Myrtle alleged that John had claimed an ownership interest in the Greenfield Title Co.; that the Greenfield Title Co. was a going concern before the dissolution decree; that all prop-

erty jointly owned by the parties was listed in the property settlement agreement in the dissolution action; that the decree of dissolution should be interpreted to be an adjudication by agreement that if the property was not listed on the settlement agreement then the adverse party had no claim or interest in the property.

After a hearing on Myrtle's motion, the trial court entered the following findings and judgment:

" . . . .

"1. This cause was submitted for trial, by agreement of the parties, on the merits of the Petition for Dissolution of Marriage on September 6, 1974. The Petitioner was present in person and by counsel and the respondent, John L. Huffman[,] was present by counsel. Evidence was heard on such date and at the conclusion of such hearing the Court entered its ruling. The evidence presented at such hearing was not recorded.

"2. At such trial Petitioner's Exhibits 1 and 2 were admitted in evidence, without objection, as the written agreements of the parties distributing their interests in jointly owned property and providing for the payment of certain indebtedness. The evidence further indicated that the parties owned other real and personal property in their own individual names and had agreed orally that in the event of a dissolution of marriage such other real and personal property would become the sole and separate property of the person owning the same or in whose name it was titled. The evidence regarding such other individually owned property did not specifically delineate such property except for petitioner's statement that the Greenfield Title Company, the Candle Shack and Riley Plaza were included therein as her individual property. The respondent did not, by evidence or argument, dispute this assertion by petitioner.

"3. Upon the conclusion of the trial on September 6, 1974[,] the Court announced its ruling from the bench and indicated the marriage of the parties would be dissolved and their agreements regarding division of property, both written and oral; [sic] would be approved as of that date with judgment to be entered by means of a written decree. Such decree was prepared and submitted to the Court for signature and was signed by the Court and entered of record under the date of September 6, 1974.

"4. Such decree does not conform to the ruling announced by the Court from the bench on September 6, 1974 in that it does not approve the oral portion of the property settlement agreement and award to the parties the individually owned real and personal property owned by them or titled to them as of September 6, 1974.

"5. Petitioner's evidentiary assertion that she was on September 6, 1974 the sole owner of the Greenfield Title Company, the Candle Shack and Riley Plaza or that respondent had no interest therein was, and is, conclusionary [sic] and insufficient to prove the status of the parties with regard to their respective interest, if any, in such properties. Respondent's failure to assert a claim or present evidence regarding his alleged interest in property other than as set forth in the written portions of the property settlement presented to the Court on September 6, 1974 is not dispositive of the issue of the ownership of such property and does not amount to a waiver, estoppel or legal bar to such a claim except as to any property, real or personal, which was titled or held solely in the name of petitioner.

"6. The appropriate relief to be granted petitioner is a *nunc pro tunc* correction of the decree heretofore entered in this cause on September 6, 1974. Such decree shall be corrected *nunc pro tunc* in conformance with the findings made herein by adding the following Rhetorical Paragraph after Rhetorical Paragraph 4 on Page 1 of such Decree:

The Court further finds that the parties have orally agreed that they each own certain other property, both real and personal, in their individual names and that hereafter each shall be the

sole owner of such property which is owned, held or titled in their individual names. The Court finds, adjudges and decrees that such oral portion of the property settlement agreement of the parties shall be approved by the Court.

"The decree entered on September 6, 1974 shall in all other respects remain in full force and effect."

## STATEMENT OF THE ISSUES

John raises the following issues, which we have restated and renumbered, for our consideration:

1. Whether the *nunc pro tunc* correction of the decree of dissolution was sustained by the evidence or was contrary to law.

2. Whether the *nunc pro tunc* correction of the decree of dissolution was contrary to Ind.Code 31–1–11.5–17(a) and thus contrary to law.

3. Whether the trial court erred in permitting Myrtle to testify at the hearing on her motion for interpretation of decree or relief from judgment as to her testimony at the dissolution hearing in 1974.

Myrtle in her cross-appeal raises the following issue for our consideration:[1]

4. Whether the trial court's *nunc pro tunc* judgment is contrary to law since the court failed to find that John did not claim or have any ownership interest in the Greenfield Title Company or any other items of property in which he later claimed to have an ownership interest.

## DISCUSSION AND DECISION

*Issue One*

John argues the trial court erred in making the *nunc pro tunc* correction of the dissolution decree because the record contains no written memorandum or other evi-

dence which shows that the trial court did in fact find an oral agreement to exist at the dissolution hearing and then approved this oral agreement when announcing its ruling from the bench.

■ "The purpose of a *nunc pro tunc* entry is to insert into the record some court action which was mistakenly omitted from the record." *Auto-Teria, Inc. v. Ahern,* (1976) 170 Ind.App. 84, 352 N.E.2d 774, *trans. denied* (1977). It has generally been held that in order for a court to amend, alter, or change *nunc pro tunc* its record after the term in which the record was made, there must be some written memorandum as the basis for amendment. *Taylor v. State,* (1921) 191 Ind. 200, 132 N.E. 294. Even though terms of court are no longer recognized in Indiana, the requirement of a written memorandum has been continued. *See Auto-Teria, Inc. v. Ahern, supra; State ex rel. Jackson v. Owen Circuit Court,* (1974) 160 Ind.App. 685, 314 N.E.2d 73. Such a written memorandum insures that the court is not supplying some ruling or order which was not in fact made. When the written memorandum relied upon does not on its face disclose an error in the record, then the trial court cannot consider extrinsic evidence in making a *nunc pro tunc* entry. *Cook v. State,* (1941) 219 Ind. 234, 37 N.E.2d 63[2]; *Auto-Teria, Inc. v. Ahern, supra.*

Myrtle contends the dissolution decree or the trial court's notes, which she attached as an exhibit to her petition, constitute a sufficient memorandum to support the *nunc pro tunc* order of the trial court and the admission of parol evidence concerning the dissolution decree. Specifically, she states, "In addition to the document [*i. e.,* the property settlement agreement], the Court further found that 'as part of said property

1. Myrtle also raised another issue for our consideration; however, since such issue was substantially the same as Issue No. 1, we need not discuss it separately.

2. For the rather lengthy subsequent history of this case which is not germane to the point for which we have cited it, see *State ex rel. Cook v. Wickens, Special Judge,* (1944) 222 Ind. 383, 53 N.E.2d 630; *State ex rel. Cook v. Howard, Warden,* (1945) 223 Ind. 694, 64 N.E.2d 25; *Dowd v. United States ex rel. Cook,* (1950) 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215; *Cook v. State,* (1951) 231 Ind. 695, 97 N.E.2d 625; and *Cook v. State,* (1951) 231 Ind. 695, 110 N.E.2d 749.

settlement agreement' the parties entered into an agreement concerning real estate and obligations." Appellee's Brief at 16. This agreement, she posits, was the oral property settlement agreement.

We find Myrtle's argument to be without foundation because her interpretation of the court's judgment is erroneous. That portion of the judgment which Myrtle argues reveals that there were other parts of the property settlement agreement not included in the written agreement states:

> "Court further finds that as part of said property settlement agreement, petitioner has executed an agreement to save respondent harmless from the obligations of mortgages on the real estate and the obligations of any notes or other unsecured indebtedness of said parties . . ."

Clearly, the "agreement concerning real estate and obligations" to which the judgment refers is the hold harmless agreement and not any purported oral property settlement agreement. Furthermore, we find nothing in the dissolution decree which discloses the purported error or omission that the trial court corrected *nunc pro tunc.* The dissolution decree is clear and unambiguous that the parties entered into a written property settlement agreement which was approved by the trial court. There is no hint in the decree that the court approved an oral property settlement agreement or that such an agreement existed.

Myrtle, however, contends that the trial court's notes which were taken during the dissolution hearing are a sufficient memorandum to support the *nunc pro tunc* decree. John, on the other hand, asserts that these notes were never introduced into evidence at the hearing on Myrtle's motion for interpretation of decree or relief from judgment, and that these notes do not indicate either the existence or court approval of any oral property settlement agreement. Myrtle counters John's assertion by positing that the court can take judicial notice of its own records which in this case would include the trial court's notes since they were an exhibit to the verified motion contained in the court's records.

It is true that a court may take judicial notice of its records, *Apple; Oakes v. Greenfield Banking Co.,* (1971) 255 Ind. 602, 266 N.E.2d 13; *Blankenbaker v. State,* (1929) 201 Ind. 142, 166 N.E. 265; *Starkie v. State,* (1943) 113 Ind.App. 589, 49 N.E.2d 968; *Pennsylvania R. Co. v. Hough,* (1928) 88 Ind.App. 601, 161 N.E. 705, *trans. denied* (1929), and therefore, the trial court could consider its notes from the dissolution hearing. However, these notes do not disclose any purported error or omission in the trial court's dissolution decree. The pertinent portion of the trial court's notes states:

> "————
> X
> All Prop. you owned included in the agreement? Yes
> ————
> Re-D
> own some of RE in my own name and not included in the transfer agreement."

The most that can be gleaned from these notes of the cross-examination and redirect examination of Myrtle at the dissolution hearing is that she owned some real estate in her own name which was not listed in the written property settlement agreement. The notes do not reflect that Myrtle and John had any oral agreement regarding this property or that the trial court approved such an agreement.

Although we are cognizant that the trial court has the inherent power to make its record speak the truth, a *nunc pro tunc* entry "may not be entered from thin air." *Blum's Lumber & Crating, Inc. v. James,* (1972) 259 Ind. 220, 223, 285 N.E.2d 822, 825. There must be some evidence that the fact which is being recorded now existed previously. In the present case there is no evidence to support the trial court's action. As we have discussed, neither the dissolution decree nor the trial court's notes disclose that there was an oral property settlement agreement which was in fact approved by the court at the dissolution hearing. Since neither written memoranda disclosed the error, parol evidence is not sufficient to authorize the *nunc pro tunc* order, and therefore, Myrtle's parol testimony is insufficient to justify the correction.

Although the trial court's notes do reveal that Myrtle owned real estate not included

in the written property settlement agreement, they do not disclose any oral agreement between John and Myrtle regarding this property. An examination of the record has left us with the impression that the trial court, some five years after the dissolution decree, realized that not all of the marital property was included in the decree, and thus the judgment was modified to conform to the evidence at the dissolution hearing. Such an action may not be taken by the trial court by entering a *nunc pro tunc* order. The trial court could have entered a new judgment pursuant to Ind. Rules of Procedure, Trial Rules 52(B) or 59 within the time limits prescribed in those rules or Myrtle could have asked for relief from the judgment within one year pursuant to Ind. Rules of Procedure, Trial Rule 60(B)(1). The trial court may not enter a new judgment *nunc pro tunc* for that is not the purpose of a *nunc pro tunc* order. Furthermore, such a procedure would place no finality on judgments, but instead render them so uncertain that no one could rely upon them.

Inasmuch as the evidence does not sustain the trial court's *nunc pro tunc* order, the judgment of the trial court is reversed.

Judgment reversed.

NEAL, P. J., and ROBERTSON, J., concur.