Fred SCHMORROW, Plaintiff-Respondent,

v.

SENTRY INSURANCE COMPANY, a mutual insurance company, a domestic insurance corporation, Defendant-Respondent,

EAGLE STAR INSURANCE COMPANY OF AMERICA, a foreign insurance corporation, Defendant-Appellant.

Court of Appeals

*No. 85–1950. Submitted on briefs November 26, 1986.—Decided March 4, 1987.*

(Also reported in 405 N.W.2d 672.)

On behalf of the defendant-appellant the cause was submitted on the briefs of *James A. Pitts* and *Jeffrey Leavell* of *Capwell, Berthelsen, Nolden, Casanova, Pitts & Kallenbach, Ltd.* of Racine.

On behalf of the plaintiff-respondent the cause was submitted on the brief of *John V. O'Connor* of *O'Connor & Warren, S.C.* of Kenosha.

On behalf of the defendant-respondent the cause was submitted on the brief of *Robert F. Johnson* and *Philip C. Reid* of *Cook & Franke S.C.* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. Eagle Star Insurance Company of America and Sentry Insurance Company were the defendants in a direct action negligence suit brought by Fred Schmorrow. Eagle Star appeals from the judgment granting Sentry's post-verdict motion for directed verdict and reapportioning the negligence assigned by the jury. Because the trial court lost competency to decide the motions after verdict and because we conclude that the interest of justice does not require that the jury verdict be set aside, we reverse that portion of the judgment. Eagle Star also claims error in the denial of its own motion for directed verdict and in the trial court's Safe Place Statute instruction. We affirm as to these issues and hold that the Kenosha Elks Club qualified as an employer under the Safe Place Statute.

On May 12, 1983, Fred Schmorrow was injured while exiting an elevator in the Kenosha Elks Club, where he had lived for about ten years. He was seventy-five years old. He claimed that he had ridden the elevator from the lobby to the third floor where his room was, that the doors opened normally, and that in attempting to step out he failed to realize that the elevator had stopped almost a foot above floor level. Schmorrow fell, seriously injuring his right shoulder.

Schmorrow brought this action against Eagle Star, the insurer of the Kenosha Elks Club, and Sentry, the insurer of the Wisconsin Elevator Corporation. He claimed that Wisconsin Elevator negligently designed, installed and maintained the elevator and that the Elks Club negligently maintained both a place of employment and a public building. For clarity's sake, we will refer to each insurer by the

name of its insured unless the context otherwise requires.

On March 28, 1985, after a lengthy trial, the jury returned a special verdict apportioning the causal negligence as follows: sixty percent to Kenosha Elks Club; thirty percent to Wisconsin Elevator; and ten percent to Schmorrow. The jury awarded a gross verdict of $315,586.35.

Motions after verdict were heard on May 16, 1985. By a decision entered August 27, 1985, the trial court granted Wisconsin Elevator's motion for directed verdict, reassigned the thirty percent causal negligence from Wisconsin Elevator to the Elks Club, and awarded judgment in the amount of $284,027.40, ninety percent of the gross verdict, against the Elks Club. Judgment was entered on September 13, 1985, and an amended judgment was entered on December 17, 1985.

The Elks Club claims first that the trial court's decision on motions after verdict was of no legal effect because it was entered more than ninety days after verdict and no order extending the time for deciding the motions was entered before the expiration of the ninety days. *See* secs. 805.16 and 801.15(2)(b), Stats.[1] We agree.

---

[1]Section 805.16, Stats., provides in pertinent part:

If an order granting or denying a motion challenging the sufficiency of evidence or for a new trial is not entered within 90 days after verdict, the motion shall be deemed denied.

Section 801.15(2)(b), Stats., provides:

The time within which a motion challenging the sufficiency of the evidence or for a new trial must be decided shall not be enlarged except for good cause. The order of extension must be made prior to the expiration of the initial decision period.

The trial court belatedly attempted to satisfy the statutory time requirements by ordering an extension of time on August 20, 1985. Recognizing that sec. 805.16, Stats., would have required a decision to be entered by June 28, 1985, and noting that at the May 16 motion hearing the parties had not objected to an extension of time, the court ordered a ninety-day extension of time, *nunc pro tunc* as of June 28, 1985.

However, although the trial court stated an intent to order an extension at the hearing on May 16, 1985,[2] it did not enter such an order prior to the expiration of the original ninety days. *Nunc pro tunc* entry is an entry made now of something actually previously done, to have the effect of the former date. Black's Law Dictionary 964 (5th ed. 1979) (citing *Seabolt v. State,* 357 P.2d 1014, 1016 (Okla. Crim. App. 1960)). Its office is not to supply omitted action, but to rectify an inadvertent or mistaken omission in the record of an action actually taken. *Id.* A court's *nunc pro tunc* authority is limited to rectifying what might be

---

Motions to dismiss at the close of plaintiff's case and motions for directed verdict are motions challenging the sufficiency of evidence within the meaning of ch. 805, Stats. *Jos. P. Jansen Co. v. Milwaukee Area Dist. Bd.,* 105 Wis. 2d 1, 7, 312 N.W.2d 813, 815 (1981).

[2]At the hearing, the trial court stated:

> There's a 60 [sic] day rule from the day of verdict. I'm going to enter an order extending it. ... So the Court will be putting an order together extending that 60 day period obviously.
>
> . . . .
>
> ... I'll put together the order extending the time limits since we're going to have more documents coming in, paperwork.

termed mechanical errors; it is appropriately exercised to conform an order or judgment to that actually pronounced. *Strawser v. Strawser,* 126 Wis. 2d 485, 490, 377 N.W.2d 196, 199 (Ct. App. 1985).

Here, had the court orally ordered an extension before the expiration of the ninety-day period, its subsequent *nunc pro tunc* order might have been valid. The court, however, did not orally order such an extension but merely indicated its intent to put together an order in the future. There being no order actually pronounced to which the subsequent order could be made to conform, *see id.,* the August 20 order did not validly extend the period for decision.

Wisconsin Elevator contends that the court's actions represented substantial compliance with secs. 801.15(2)(b) and 805.16, Stats. However, strict compliance with procedural statutes is necessary. *Trojan v. Board of Regents,* 104 Wis. 2d 277, 284, 311 N.W.2d 586, 589 (1981). This must be particularly true when procedural rules affect the court's jurisdiction or competency to act. *See, e.g., Graf v. Gerber,* 26 Wis. 2d 72, 74-76, 131 N.W.2d 863, 865 (1965) (a decision on a motion for new trial, announced in chambers within statutory time period, is not valid absent announcement in open court or filing of written decision or order within such period). Loss of competency to proceed necessarily depends on a date certain; extensions of that date must therefore be based on an unequivocal and precise action by the trial court.

The expiration of the ninety-day time limit deprived the trial court of competency to exercise its jurisdiction to decide the motions after verdict. *Jos. P. Jansen Co. v. Milwaukee Area Dist. Bd.,* 105 Wis. 2d 1, 10, 312 N.W.2d 813, 817 (1981). Pursuant to sec.

805.16, Stats., the motions should have been deemed denied. *Id.* at 8, 312 N.W.2d at 816.

We, then, proceed on the basis that the motions after verdict are deemed denied, but we review the record to determine whether, in the interest of justice, we should invoke our power under sec. 752.35, Stats., to accomplish the result the trial court attempted to accomplish as to Wisconsin Elevator. *Id.* at 10, 312 N.W.2d at 817.

The trial court granted Wisconsin Elevator's motion for directed verdict, holding there was no credible evidence supporting the jury's determination that Wisconsin Elevator was causally negligent. Section 805.14(1), Stats., sets forth the standard governing the granting of a motion challenging an answer in a verdict or the sufficiency of the evidence as a matter of law to support a verdict. The motion shall not be granted:

> unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party.

*Id.* While not overwhelming, we conclude that sufficient evidence was presented to make Wisconsin Elevator's causal negligence a jury question.

Wisconsin Elevator installed the elevator in the late 1960s and contracted with the Elks Club to maintain and service the elevator. The jury heard testimony regarding the history of faulty performance of the elevator, particularly in the six months preceding the accident. Witnesses told of incidents involving leveling problems and the elevator's stopping between

floors. A jury acting reasonably could conclude that Wisconsin Elevator merely patched up the immediate malfunctions without ever coming to grips with diagnosing the real problem.

In addition, Schmorrow presented evidence that the cam bar involved in the elevator's door-opening sequence was of a length which, although not violating any state regulation or industry standard, was unnecessary on a two-speed elevator such as this.[3] This cam bar would allow the door to open when the elevator was higher above the floor than would the shorter cam bar more commonly used, in the witness' experience, on this type of elevator. Compliance with industry custom does not establish due care as a matter of law. *Fischer v. Cleveland Punch & Shear Works Co.*, 91 Wis. 2d 85, 97, 280 N.W.2d 280, 286 (1979). A jury acting reasonably could have concluded that the cam bar installed by Wisconsin Elevator was unnecessarily long, creating an unsafe condition which contributed to the severity of Schmorrow's injury when the elevator failed to stop properly at floor level.

There is sufficient credible evidence to make Wisconsin Elevator's negligence a jury question. Therefore, we are not compelled in the interest of justice to vacate the jury's verdict on this issue. We reverse the portion of the judgment dismissing Wis-

[3] One of Schmorrow's experts testified that cam bars of the length found in the Elks Club elevator are normally seen on high speed elevators, in which they operate to pre-open the elevator doors.

consin Elevator from the action and reapportioning its negligence to the Kenosha Elks Club.[4]

The Elks Club contends next that the trial court should have granted its motion for directed verdict.[5] We conclude that sufficient credible evidence supports the jury's finding of sixty percent causal negligence attributable to the Kenosha Elks Club.

The Elks Club was responsible for maintenance of the building, including areas containing the elevator machinery. The jury heard testimony that when the Wisconsin Elevator service mechanic arrived in response to a call the day after the accident he found the door to the rooftop elevator machine room unlatched. The interior of the machine room, including elevator contacts, relays and switches, was soiled with pigeon droppings and feathers.[6] There was testimony that such soil on elevator electrical equipment could cause malfunctioning and that it was important to keep the machine room door closed. The mechanic testified that at the time he believed the pigeon debris caused the elevator malfunction and that he had previously told Elks Club employees to replace the wire door closing device with a hasp.

In addition, it was established that, despite the elevator's history of leveling problems, the Elks Club

---

[4]Since we are directing that judgment be entered in accordance with the verdict, we need not address the issue of the trial court's power to reapportion negligence. All three parties concede that the trial court lacked such authority.

[5]The trial court's belated decision on motions after verdict does not affect this question, since the motion was deemed denied anyway, pursuant to sec. 805.16, Stats.

[6]Apparently, the mechanic was not informed that an accident had occurred and simply cleaned up the debris and got the elevator running again.

did not warn patrons to exercise caution in using the elevator.

There was sufficient credible evidence to make the Kenosha Elks Club's causal negligence a jury question. We affirm the judgment in this regard.

The Elks Club next requests a new trial because the trial court instructed the jury that the Elks Club owed Schmorrow the duty of care placed upon an employer by the Safe Place Statute, sec. 101.11, Stats. *See* Wis J I—Civil 1900.4.

The Elks Club contends that it is not an "employer" under the Safe Place Statute because it is a not-for-profit fraternal organization. It contends that its duty was the lesser one of an owner of a public building under the same statute. *See* Wis J I—Civil 1904. Both employers and owners of public buildings have the duty to construct, repair or maintain the place of employment or public building so as to render it safe. Sec. 101.11(1), Stats. Employers have the additional duty to furnish a place of employment which is safe for employees and frequenters, to furnish and use safety devices and safeguards, to adopt and use methods and processes reasonably adequate to render the place of employment safe, and to do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees and frequenters. *Id.*

Premises cannot be a "place of employment" unless activities there are in whole or in part carried on for direct or indirect profit. Sec. 101.01(2)(f), Stats.;[7]

---

[7]Section 101.01(2)(f), Stats., defines "place of employment" as including:

*Voeltzke v. Kenosha Memorial Hosp., Inc.,* 45 Wis. 2d 271, 278, 172 N.W.2d 673, 676 (1969). The existence or nonexistence of an actual profit is not material; profit motive is the critical factor. *Id.* The pertinent inquiry here was whether the record would support a conclusion that the relevant activities carried on at the Kenosha Elks Club were sponsored by that organization because of the profit motive. *See Haerter v. City of West Allis,* 23 Wis. 2d 567, 570, 127 N.W.2d 768, 770 (1964).

The Elks Club premises contained seven restaurants, five bars and a large hall available for rental, as well as rooms rented to members and guests. The Club employed some eighty-five people. Schmorrow offered deposition testimony of the Kenosha Elks Club manager to the effect that when the Elks Club operates at a profit, which it had within the past five years, the profit is channeled back into entertainment devices such as pool tables, or into building maintenance or the Elks Lodge Rehabilitating Fund. If rental moneys exceeded operation costs, the money was applied to reduce the cost of services and facilities provided to members. The trial court held that a profit motive had been established, despite the Elks Club's contention that its goal was a zero balance, not a profit.

The Elks Club argues that this issue is governed by the *Voeltzke* case. In *Voeltzke,* 45 Wis. 2d at 281, 172 N.W.2d at 678, the supreme court held that a hospital, organized as a nonprofit corporation, did not constitute an employer simply because it operated so

every place ... where either temporarily or permanently any industry, trade or business is carried on ... and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit ... .

as to have earnings in excess of expenditures which would be plowed back into the business and into expansion of its facilities.

We do not find the Elks Club's argument convincing. We perceive a significant difference between a hospital and a club, albeit concededly organized for charitable and fraternal purposes, which holds its restaurants and bars open to the public and rents out its halls and rooms to members and those sponsored by members. The moneys earned by such activities allow the club to offer better services and facilities to its members at a reduced cost.

The Safe Place Statute defines "place of employment" very broadly. *Ball v. City of Madison,* 1 Wis. 2d 62, 65, 82 N.W.2d 894, 896 (1957). It is sufficient, if the other broad criteria are met, that any person is employed there for direct *or indirect* gain or profit. Sec. 101.01(2)(f), Stats. We conclude that sufficient evidence established the Kenosha Elks Club's motive for at least indirect gain or profit from operating and employing persons in its club premises, including the part of the building where this accident occurred. *Cf. Waldman v. Young Men's Christian Ass'n,* 227 Wis. 43, 46–47, 277 N.W. 632, 633 (1938) (swimming pool accident occurred in portion of YMCA building devoted to the organization's charitable purposes; it was immaterial that hotel or dormitory was operated for profit elsewhere in the building). Therefore, the trial court correctly instructed the jury that the Elks Club had an employer's duty under the Safe Place Statute.

We next turn to Eagle Star's contention, in which it is joined by Sentry, that the damages awarded were excessive. Where, as here, the trial court has sustained the verdict over a claim of excessiveness, the

question is whether there is any credible evidence that under any reasonable view supports the verdict and removes the issue from the realm of conjecture. *Coryell v. Conn,* 88 Wis. 2d 310, 315, 276 N.W.2d 723, 726 (1979).

The jury heard ample evidence that Fred Schmorrow has suffered severe and continuing pain from his shoulder injury. His fracture did not heal properly; one doctor described the misalignment of Schmorrow's humerus bone and shoulder joint as like an ice cream cone in which the ice cream has slipped down to the side. The range of motion of his right arm is restricted; as he is right-handed, he now requires assistance with such activities as cutting his food, tying his shoes and writing. He wears a sling, which he testified reduces his pain by taking weight off his shoulder, and he continues to take pain medication every day. His condition is not expected to improve significantly. Schmorrow's activity level, social life and personality have been significantly affected. Formerly a sociable retiree, he now spends much of his day alone in his room. We conclude that, although sizeable, the verdict has sufficient support in the record. The facts of Schmorrow's age and comparatively short life expectancy do not persuade us otherwise. We therefore affirm the judgment on this issue.

Finally, we address the issue of costs and disbursements. After deciding the motions after verdict, the trial court concluded that two-thirds of Sentry's costs should be taxed against Schmorrow and one-third against Eagle Star. Since we are directing that judgment be entered in accordance with the jury verdict, we reverse the judgment in this regard. Costs

should be reassessed in the manner conventionally used to assess costs in joint tortfeasor cases.

We reverse that portion of the judgment dismissing Sentry from the action and reapportioning the jury's assignment of negligence and remand for entry of judgment consistent with the jury's verdict and for appropriate assessment of costs.

Costs on this appeal are denied to both parties.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.