DIEHL LUMBER TRANSPORTATION INC., Plaintiff and Appellant,

v.

Glen J. MICKELSON d/b/a Glen's Service Company, Defendant and Appellee,

Glen J. MICKELSON d/b/a Glen's Service Company, Third–Party Plaintiff and Appellee,

v.

HERITAGE CORPORATION, a Utah corporation; Comtel, a Utah corporation; American West Mortgage Corporation, a Utah corporation; Zions First National Bank, a Utah corporation; and Far West Savings & Loan, Third–Party Defendants and Appellant.

No. 890179–CA.

Court of Appeals of Utah.

Nov. 21, 1990.

Richard A. Rappaport (argued), Keith W. Meade (argued), Cohne, Rappaport & Segal, Randy B. Coke, Beaslin, Nygaard, Coke & Vincent, Salt Lake City, for Diehl Lumber & Zions First Nat. Bank.

M. Richard Walker (argued), M. Richard Walker & Associates, Salt Lake City, for respondent Mickelson.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Appellants Diehl Lumber Transportation, Inc. (Diehl) and Zions First National Bank (Zions) appeal the trial court's judgment for appellee Glen J. Mickelson d/b/a Glen's Service Company (Mickelson) authorizing Mickelson to foreclose his mechanic's lien as against Diehl and Zions. We reverse.

## FACTS

The property that is the subject of this litigation is a building in Murray, Utah, referred to as the "Comtel building," owned and constructed by Heritage Corporation for Comtel Corporation, the building's intended lessee. Heritage hired Mick-

elson to provide electrical materials, equipment and labor for the Comtel building. Financing for building construction was obtained from American West Mortgage, which assigned its interest to Far West Savings and Loan. Zions obtained title to the property after default and foreclosure under Far West's trust deed. Diehl purchased the property from Zions, with Zions retaining a trust deed interest.

Prior to the foreclosure sale, Heritage had failed to pay the sum of $27,026.46 owing to Mickelson pursuant to the contract between them. Mickelson filed a lien against the property, which was recorded August 21, 1986, and stated, "Last Labor/Material provided on or about: 05/15/86." The lien did not specify a dollar amount.

Diehl commenced this action on October 28, 1986. Diehl's complaint sought only a restraining order to prevent Mickelson from entering the Comtel building and removing property that Mickelson had installed. Mickelson filed an answer and counterclaim, claiming he retained title to materials he had installed because he had not been paid. On November 12, 1986, Mickelson filed a motion for a writ of replevin, alleging he had installed items of personal property and equipment in the Comtel building.

On June 12, 1987, Mickelson filed, without prior leave of court, a proposed third-party complaint seeking for the first time to foreclose a mechanic's lien against Heritage, Comtel Corporation, American West, and Zions. On June 18, 1987, Mickelson filed a "Motion for Leave to File Third Party Complaint," and a notice of hearing designating June 29, 1987 as the hearing date on the motion. On June 29, 1987, the court entered a minute entry which stated that "Based on the Defendant's Motion Court orders the Defendant's Motion for Leave to File Third Party Complaint be continued to July 6, 1987 at 2:00 p.m." Nothing in the record indicates the motion was actually considered and/or ruled upon on either June 29 or July 6, 1987. On November 25, 1987, the court entered a nunc pro tunc order stating that Mickel-

son's motion "came on regularly for hearing on the 29th day of June, 1987," and that Mickelson "is hereby granted [sic] to amend and file the Third Party Complaint herein, effective as of the date of filing." The order was apparently entered without further motion, notice, or hearing. On February 1, 1988, Mickelson filed a "Motion for Leave to Amend Counterclaim" against Diehl to conform to the third party complaint issues, namely the foreclosure action. This motion was granted.

After trial, the court denied Mickelson's claim that he had a valid security interest in the items installed, but ordered that he could foreclose his mechanic's lien against Zions and Diehl, finding Mickelson had priority over their interests. Diehl and Zions appeal on several bases, including an assertion that the foreclosure action against each of them was untimely. We agree and therefore reverse.

## NUNC PRO TUNC ORDER

■ A defendant must obtain leave of court to file as a plaintiff, a third-party complaint more than ten days after service of its original answer. Utah R.Civ.P. 14(a). The parties dispute the date upon which Mickelson last worked on the Comtel building. However, the court found that Mickelson provided labor, materials and equipment until June 10, 1986, when he suspended work. That date is substantially later than that indicated in the recorded lien (May 15, 1986) or claimed by Diehl and Zions. However, for purposes of our nunc pro tunc analysis, we will accept the trial court's determination that June 10, 1986 was the last day Mickelson provided work or materials to the project.

■ In order to foreclose a mechanic's lien, a claimant must commence court action within twelve months after (a) completion of the contract, or (b) suspension of work for thirty days. Utah Code Ann. § 38–1–11 (1988); *Mickelsen v. Craigco, Inc.,* 767 P.2d 561, 563 (Utah 1989). Therefore, Mickelson was required to commence his foreclosure action within twelve months plus thirty days after June 10, 1986, which Mickelson contends gave him until July 9,

1987. Failure to commence a timely mechanic's lien foreclosure action divests the court of jurisdiction. *AAA Fencing Co. v. Raintree Dev. & Energy Co.*, 714 P.2d 289 (Utah 1986) (per curiam).

Mickelson commenced the foreclosure proceeding against Zions by filing his third-party complaint on June 12, 1987. Because June 12 was more than ten days after filing Mickelson's answer, he was required to obtain leave of court to file the third-party complaint. The motion for leave was filed June 18, 1987, and, as explained previously, was not actually granted until November 25, 1987, by the court's nunc pro tunc order, to be effective as of the date of filing. The court's findings of fact state that the leave to file the third-party complaint "was given by stipulation of the plaintiff's attorney and a subsequently signed Nunc Pro Tunc Order of the Court."

The only evidence in the record of a stipulation is a letter dated November 24, 1987, from Diehl's former counsel, stating as follows:

Dear Judge Sawaya:

Pursuant to the request of Richard Walker, Esq., I wanted to advise the Court that in June of 1987, Mr. Walker asked if I would oppose his Motion to Amend his pleadings to file a Third–Party Complaint. At that time I informed him that Diehl Lumber Transportation would not oppose the Motion, feeling that the Court would grant the motion irrespective of opposition.

■ The Utah Supreme Court has stated that a nunc pro tunc order's function is "not to make an order now for then, but to enter for then an order previously made." *Preece v. Preece*, 682 P.2d 298, 299 (Utah 1984). There are two types of nunc pro tunc orders: (1) to correct a clerical error; or (2) to provide a remedy when a party dies after submission of a case but before judgment is entered. Where the order is to correct a clerical error, the court's act is effective earlier so that the record accurately reflects what happened. "A motion nunc pro tunc is used to make the record speak the truth; it may not be used to correct the court's failure to speak." *Id.*

Therefore, the nunc pro tunc order is designed to reflect the existence and content of a previous order.

The function of a nunc pro tunc order is not to correct some affirmative action of the court which ought to have been taken, but its purpose is to correct the record which has been made, so that it will truly express the action taken but which through inadvertence or mistake was not truly recorded.

*Application of Bower*, 171 Neb. 452, 106 N.W.2d 689, 691 (1960) (quoting *Akins v. Chamberlain*, 164 Neb. 428, 82 N.W.2d 632, 633 (1957)).

Courts have taken different positions regarding permissible means of proving clerical error. Some hold that an order nunc pro tunc cannot be based merely upon recollection of the judge or other persons nor on ex parte affidavits or testimony. *O'Dell v. Dowd*, 102 Ill.App.3d 189, 57 Ill.Dec. 650, 652, 429 N.E.2d 548, 550 (1981). Others have held that the personal recollection of the court, records, or witness testimony may be used, but not for the purpose of correcting an erroneous judgment. *Ruby v. Wolf*, 39 Ohio App. 144, 177 N.E. 240 (1931). Whatever type of evidence is considered sufficient, however, "[t]here must be some evidence that the fact which is being recorded now existed previously." *Huffman v. Huffman*, 424 N.E.2d 456, 460 (Ind.Ct.App.1981).

In *Schmorrow v. Sentry Ins. Co.*, 138 Wis.2d 31, 405 N.W.2d 672, 674–75 (Ct.App. 1987), the court indicated that where statutory jurisdiction is at issue, strict compliance would be required. The court noted that a nunc pro tunc order

is an entry made now of something actually previously done, to have the effect of the former date.... Its office is not to supply omitted action, but to rectify an inadvertent or mistaken omission in the record of an action actually taken.... A court's nunc pro tunc authority is limited to rectifying what might be termed mechanical errors; it is appropriately exercised to conform an order or judgment to that actually pronounced.

*Id.* 405 N.W.2d at 675 (citations omitted). Similarly, in *Kettner v. Snow,* 13 Utah 2d 382, 375 P.2d 28, 30 (1962), our supreme court held that using nunc pro tunc power,

> clerical errors may be corrected or omissions supplied so the record will accurately reflect that which in fact took place. However, this device cannot properly be used in the manner resorted to here to revive the time for taking a required step in a legal proceeding after the statutory time for doing it had elapsed.

*Id.* (motion for new trial not timely filed). A nunc pro tunc order may not be used "to show what the court might or should have decided, *or intended to decide, as distinguished from what it actually did decide.*" *Larson v. Bedke,* 211 Neb. 247, 318 N.W.2d 253, 258 (1982) (emphasis in original).

■ Evidence supporting a nunc pro tunc order in this case is wholly lacking. Case law requires that the nunc pro tunc order reflect an actual order made on the earlier date. Nothing in the record before us indicates that the court considered the motion for leave to file on June 12, the nunc pro tunc effective date, or on June 29, when it was noticed for hearing, or on any date prior to July 10, when the date for filing a foreclosure action expired.

■ Contrary to the dissent's statement, the nunc pro tunc order does not state that leave was granted on June 29; only that the motion "came on regularly for hearing" on that date. If one is to believe the minute entry, hearing on the motion was then continued. We do not assume that the minute entry is either correct, as the dissent states we do, or error because the motion was granted, as the dissent assumes. Nor do we assume that a July hearing was held, or even noticed. All such assumptions are similarly speculative and inappropriate as a basis for finding a "clerical mistake" justifying the nunc pro

tunc order. There is simply no evidence to show what, if any, clerical error occurred, or that a prior order was made by the court. Further, the November letter from Diehl's former counsel is insufficient to confer jurisdiction. While counsel may have agreed in June 1987 to not oppose the motion for leave to file a third-party complaint, that does not constitute a stipulation to waive the foreclosure time requirements after the time had expired.[1]

We conclude that the nunc pro tunc order lacked validity and as a result, the third-party complaint was not filed within the statutory time. The court, therefore, lacked jurisdiction to rule on the foreclosure claim against Zions.

## RELATION BACK

The foreclosure claim against Diehl fails for related reasons. Diehl's complaint alleged that Mickelson filed a lien on May 7, 1986, and Mickelson admitted that allegation in his complaint. However, the lien foreclosed was not based on the May 7, 1986 filing, but on the August 21 lien. Furthermore, Mickelson did not seek nor claim a right to foreclosure of any lien in his answer or counterclaim. It was not until February 1, 1988 that he sought to amend his counterclaim against Diehl to state a foreclosure claim, based on the third party complaint against Zions. Because we have found the third party complaint ineffective, the amendment must be justified pursuant to Utah R.Civ.P. 15, if at all.

■ Rule 15(a) provides that untimely amendments to pleadings shall be permitted if stipulated or by leave of court, "and leave shall be freely given when justice so requires." Rule 15(c) further provides that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the

---

1. We disagree with the dissent's conclusion that Zions' filing an answer to the third-party complaint means the motion for leave to file was granted on June 29. Again, the dissent is speculating. It is equally reasonable to speculate that Zions knew the motion was scheduled for hearing on the 29th and did not appear at the hearing, so assumed the motion had been granted. When Zions learned otherwise, it took steps to protect its interests. Furthermore, filing an answer could not effectively waive jurisdictional requirements.

original pleading, the amendment relates back to the date of original pleading." Relation back may operate to allow an action otherwise barred by a statute of limitations. *Ringwood v. Foreign Auto Works, Inc.*, 786 P.2d 1350, 1359 (Utah Ct.App. 1990). "In considering motions to amend pleadings, primary considerations are whether parties have adequate notice to meet new issues and whether any party receives an unfair advantage or disadvantage." *Id.* at 1359–60. *See also Yearsley v. Jensen*, 798 P.2d 1127 (Utah 1990).

There are no Utah cases directly addressing the issue of whether Rule 15(c) can extend the time to file under the mechanics' lien statute. The Arizona Supreme Court, however, has held that the relation back doctrine cannot revive a foreclosure action that was not timely filed. *United Pacific v. Cottonwood Properties*, 156 Ariz. 149, 750 P.2d 907 (1987). The complaint in *United Pacific* originally involved the validity of various mechanics' liens, but did not seek to foreclose. The court found that while the Arizona lien statutes are remedial, they should be strictly enforced. Consequently, the court found that at the point the party moved to amend its complaint, after the statutory filing period, there were no liens upon which to file. "They were null and void and any right of action had been extinguished." *Id.* 156 Ariz. at 150, 750 P.2d at 908.

In *AAA Fencing Co. v. Raintree Dev. & Energy Co.*, 714 P.2d 289 (Utah 1986), the Utah Supreme Court analyzed the Utah mechanics' lien statute in a similar manner, finding that the statute

> is not a statute of limitations, which is waived if not pleaded, but a statute limiting the duration of the lien. The remedy forms a part of the right and must be pursued within the time prescribed, or else both are lost. If an action is not brought within the time limited, the court is without jurisdiction to decree a foreclosure. . . .

*Id.* at 291 (quoting *Fleshman v. Whiteside*, 148 Or. 73, 34 P.2d 648, 650 (1934)).

Mickelson had until July 10, 1987, at the latest, to file his foreclosure action in compliance with the statute. After that date, there was no lien upon which to file a foreclosure action. Viewing the statutory time limit as strictly jurisdictional, it follows that once the time had expired, the court lacked authority to revive the lien by permitting amendment under Rule 15(c). The decree of foreclosure against Diehl is, therefore, void.

We reverse the judgment of foreclosure against both Zions and Diehl. We remand for a determination of attorney fees to be awarded to Zions and Diehl in conformance with Utah Code Ann. § 38–1–18 (1988).

JACKSON, J., concurs.

BENCH, Judge (dissenting):

I respectfully dissent. The confusion in our review of this case results from the failure of the nunc pro tunc order to clearly identify the clerical error that it intends to correct. The order does, however, expressly state that the trial court granted its leave to file the third party complaint on June 29, 1987. Mickelson argues on appeal that the minute entry of the clerk stating that the June 29th hearing was continued was erroneous in that the motion was granted that day and the hearing was not continued. In other words, the minute entry following the June 29th hearing was the error the trial court intended to correct with the nunc pro tunc order.

The majority, on the other hand, accepts the minute entry as true and focuses on whether the second hearing ever occurred or whether the trial court ever made the decision indicated in the order. Since the majority concludes that the second hearing should have occurred, it searches for, but does not find, any clerical errors in conjunction with the second hearing. The majority does not find a clerical error, however, because there was no second hearing, nor was one required, because the motion for leave was in fact granted on June 29th as indicated in the nunc pro tunc order.

It is of significant note that Zions does not argue that the hearing was in fact continued or that a decision was in fact never made on the motion. Zions relies

solely upon the same erroneous minute entry and the record's subsequent silence as to a second hearing for the proposition that the decision was not made on June 29th.[1] Furthermore, the record does provide a basis for concluding that leave was in fact granted on June 29th. Zions filed its answer to the third party complaint on July 2nd, only three days after the nunc pro tunc order stated that leave was granted. It is reasonable to conclude that a party as experienced in litigation as Zions would not have filed an answer to a "proposed" third party complaint before it became effective. I would therefore accept the representation made by the nunc pro tunc order that leave was in fact granted on June 29th.

Even if there was a question as to whether leave had been granted on June 29th, Zions, by filing an answer that did not assert that defense, consented to the filing and thereby waived that defense under Rule 12(b) of the Utah Rules of Civil Procedure. *See Valley Bank & Trust Co. v. Wilken*, 668 P.2d 493 (Utah 1983) (defenses which have not been raised by the answer or by proper motion may not be raised in opposition to a motion for summary judgment). Since the answer was filed within the statutory period, as determined by the trial court, the third party complaint was timely filed against Zions. Inasmuch as a foreclosure action was properly initiated against one of the parties in interest, the remaining parties could be included under the relation back doctrine as recently announced by the Utah Supreme Court in *Projects Unlimited, Inc. v. Copper State Thrift & Loan Co.*, 798 P.2d 738 (Utah 1990).

I would therefore uphold Mickelson's mechanic's lien as being timely filed.

---

1. The fact that there is no record of a second hearing is consistent with and supports the conclusion that there was, in fact, no second hearing.